[L. A. No. 8278. In Bank.—April 2, 1928.]

CHARLES JOHNSTON et al., Appellants, v. GEORGE W. KITCHIN, Respondent.

Marshall Stimson, Noel C. Edwards, and Bicksler, Smith & Parke for Appellants.

Anderson & Anderson for Respondent.

SEAWELL, J.—This cause is before us on an order of transfer to this court after decision by the district court of appeal, first appellate district, division one.

The cause was taken over by us for the reason that we were not in accord with that portion of the decision which held that a copartnership existed between David S. Johnston, the decedent, and defendant, George W. Kitchin, as to the ownership of the real property in suit. We are of the opinion that section 1524 of the Code of Civil Procedure (which has to do solely with personal property) and other code sections relied upon by appellants, which prescribe the procedure for sale of partnership interests belonging to estates and the duty of the court or judges in such matters, are not applicable to the present case. It was on the assumption that the ownership of the property created a partnership relation, and that the purchaser, who was held to be the surviving partner of the decedent, had not, contrary to his bounden duty, acquainted the representative of the estate and the court with full information as to all the facts within his knowledge "from which a sound judgment as to the value of the interest of the estate" might be gained, that the reversal of the trial court was placed. On all other questions of fact, including fraud alleged to have been practiced upon the heirs of the decedent by a public officer, an attorney at law and the defendant, acting in furtherance of a conspiracy to acquire the real property in suit at an inadequate price and by unfair methods, the findings of the trial court were sustained. That portion of the opinion appended below is a correct statement of the facts, except in the single particular noted in the matter contained within brackets, and of the law of the case and is adopted by us as a part of our opinion with respect to the subjects therein considered. It follows:

"An action to have a trust declared as to an interest in certain real property purchased by the defendant from the estate of David S. Johnston, deceased.

"The property, which consists of lots 15 and 16 in block 1 of Wilshire Boulevard Tract in Los Angeles county, was acquired by the deceased and the defendant in the year 1910, and in 1911 was improved by the erection thereon of a four-story brick apartment hotel, known as the Hotel Shoreham.

"David S. Johnston died intestate in Los Angeles county on November 18, 1919, and at the time of his death the property was incumbered by a mortgage originally executed for $35,000, but of which $5,000 had been paid, and the time for the payment of the balance extended to December 28, 1921.

"None of the heirs of the deceased resided in California, and on December 17, 1919, letters of administration on the estate were granted to the public administrator of Los Angeles county.

"An inventory and appraisement of the estate was filed on January 23, 1920, from which it appears that the deceased, in addition to his interest in the hotel, the appraised value of which was $40,000, owned other real and personal property, the total appraised value of the estate being $59,-801.80.

"Thereafter, on January 28, 1920, the administrator caused to be posted and published, in accordance with the provisions of the statute, a notice that the interest of the estate in the hotel property would be sold at a private sale to the highest and best bidder for cash, subject to confirmation by the court.

"The defendant, who so far as shown was the only bidder, agreed to assume and pay the proportionate part of the mortgage chargeable to the estate, viz., $15,000, and in addition to pay the estate the sum of $21,000, a total of $36,000, this sum being 90 per cent of the appraised value of the interest of the estate in the hotel.

"It was alleged in the petition for confirmation that the sale would be for the best interest of the estate and was necessary in order to pay claims, and, further, that the amount bid by the defendant was fair and reasonable and not disproportionate to the value of the interest sold.

"The notices of sale were regular and the petition sufficient to give the court jurisdiction, and no errors in its exercise would render the decree void. (*Burris* v. *Kennedy,* 108 Cal. 331 [41 Pac. 458]; *Estate of Bette,* 171 Cal. 583 [153 Pac. 949]; *Estate of Spriggs,* 20 Cal. 121.)

"After a hearing, which was duly noticed, the sale was confirmed to the defendant on March 3, 1920, following which a deed was executed by the public administrator.

"Upon the petition of plaintiff Charles Johnston, who was a brother of the deceased, the letters granted to the public administrator were revoked on March 9, 1920, and letters of administration were duly issued to the petitioner.

"The complaint alleged with respect to the hotel 'that at the time said property was acquired said David S. Johnston and G. W. Kitchin were and had been for some time past partners, and during the years of 1910 and 1911 as partners they erected the building on the above described property known as the "Hotel Shoreham," and that from the date that they acquired the property until the death of David S. Johnston they were partners in the ownership and conduct of the business connected with the above described property and the Hotel Shorcham, and that the defendant, George W. Kitchin, managed the affairs of the partnership, collected the rents and paid all of the charges and attended to all of the business of the partnership, giving to the said David S. Johnston monthly statements of account,' these allegations not being denied by the answer. [Before any allegation is made in said second amended complaint as to a partnership relation existing between decedent and defendant, Kitchin, it is alleged specifically that at the time of the death of decedent and for a long time prior thereto defendant Kitchin, and decedent were each the 'owner of an undivided one-half interest in and to' the property in suit.]

"It was also averred that by a fraudulent arrangement between the public administrator and the defendant the fact that the sale proceedings were pending was concealed from the heirs and their attorneys, that the defendant to induce the public administrator to institute the proceedings and procure the decree mentioned represented to the latter that in the event the sale was not made it was his intention to bring suit for a partition of the property, falsely repre-

sented the terms of the mortgage thereon, that there would be difficulty in renewing the same, that the hotel was in need of repairs, that the lessee in possession was in default in the payment of rent, and that the lease was about to expire; that the public administrator, influenced by the defendant, made no effort to procure higher bids, and that the price paid to the knowledge of both was less than the reasonable market value of the interest sold; that the public administrator, induced by the representations of the defendant as to the value and condition of the property, falsely represented to the court that the sale was necessary in order to pay claims, was for the best interests of the estate and that the amount bid by the defendant was fair and reasonable.

"The allegations of fraud were denied, and all the allegations of the complaint, with the exception of those admitted by the answer, were found by the trial court to be untrue, and upon its findings judgment was entered for the defendant.

"The plaintiffs appealed, and urge as grounds for reversal that the facts shown by the evidence and those admitted sustain their contention that the conduct of the defendant was actually and constructively fraudulent, and that the findings and judgment are unsupported.

"Without reviewing in detail the evidence in support of the allegations of a fraudulent arrangement between the defendant and the public administrator, a concealment by the latter of the fact that the proceedings were pending, and a failure to use due diligence in the matter of obtaining higher bids, it will be sufficient to say that the findings of the trial court on these issues were fully sustained, as was also the finding against the allegation that the administrator fraudulently misrepresented the value of the hotel property and the condition of the estate to the probate court.

"It was testified by the defendant that it was his intention in the event he was unable to purchase the interest of the estate in the hotel to bring suit for partition, and that he so stated to the administrator; that he further stated that both the mortgage and the lease had something over a year to run; that the hotel could not be again leased without repairs, and that the rent had previously been in arrears, but that subsequently the payments were made.

"The evidence shows that certain repairs were necessary, and that with the exception of the statement as to the date of the maturity of the mortgage and that there would be difficulty in renewing the same, the other representations were substantially true."

We agree with the district court of appeal in its conclusion that the evidence is sufficient to sustain the judgment that the sale was not fraudulently procured, and that the statutes providing for the sale of real estate where the property is not owned in copartnership were fully observed. The trial court's findings upon the disputed questions of fact which are urged upon this appeal for reversal by us have been finally disposed of by said trial court, and unless we are able to say as a matter of law that the findings and judgment are wholly without evidentiary support we are not permitted under the law to disturb either. That we cannot say.

■ No fiduciary copartnership relation existed between the decedent and his cotenant in the real property in suit. Neither were they copartners in conducting any sort of business. They were simply tenants in common in the ownership of the city lots described in the complaint, and the necessary repairs and rentals were but incidents of ownership. Their relationship was no whit different from the ownership of leased farm lands held by tenants in common. One of the tenants in common as the agent of the other was the manager, collecting and receipting for rents and attending to such matters as are incidental to the ownership of property. After all expenses were deducted he paid to the other one-half of the net profits. That was far from making them copartners in the ownership of said real property. As above remarked, the rentals were but the usual incidents that follow the ownership of real property. After decedent's death the rentals, of course, continued automatically to accrue. They were collected generally by the administrator, who, after deducting current expenses, paid one-half of the residue to defendant. No copartnership business was offered for sale or could have been sold, as none existed. The matter of collecting the rentals and managing the affairs appertaining to the building was not regarded by either administrator, court or defendant or anyone else as a

copartnership affair, as the administrator was in full charge of the management of the estate throughout.

As to the point that the defendant was bound, as a surviving partner, to inform the court and administrator as to all the affairs of the copartnership, and, further, that it was the duty of the court to examine him if in the county and able to be present in court (Code Civ. Proc., sec. 1524), the public administrator was fully informed as to the title by which the decedent and defendant owned said real property, as is shown by the returns and reports made to the administrator and by him to the court. Aside from the record, there is other evidence that he had knowledge of the nature of the tenure by which both owners held. It was practically impossible that either he or the court could have administered the estate without full knowledge of everything affecting the value of said real property, the title to which was a public record. What secret, may we ask, could be suppressed that would or could affect the value of a commercial city lot, the title to which is a public record and its value an open matter of investigation to the entire public? We know of none and think in a practical sense none can exist.

Curtis, J., Waste, C. J., Langdon, J., Richards, J., Preston, J., and Shenk, J. concurred.

Rehearing denied.