[S. F. No. 17507.   In Bank.   Apr. 29, 1948.]

MODERN BARBER COLLEGES, INC. (a Corporation), Appellant, v. CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION et al., Respondents.

Ralph Robinson for Appellant.

Robert W. Kenny, Fred N. Howser, Attorneys General, Clarence A. Linn, Doris H. Maier and Charles W. Johnson, Deputy Attorneys General, for Respondents.

GIBSON, C. J.—This is a proceeding in mandamus to compel the respondent commission to vacate its findings that certain students, the bookkeeper and the proprietor of the petitioning corporation are employees within the meaning of the Unemployment Insurance Act (Stats. 1935, p. 1226; 3 Deering's Gen. Laws, Act 8780d, as amended) and to cancel the charges made against the petitioner by virtue of these findings. The trial court sustained a general demurrer to the petition without leave to amend, and the petitioner appeals from the judgment for the respondent.

The petition alleges that E. M. Robinson is the sole owner of the petitioning corporation, which has never issued any capital stock and has no directors, officers or assets, and that Robinson is operating a barber college "as if no corporation had ever been formed." Students are admitted according to the requirements of the Board of Barber Examiners and can be dismissed only for violation of the board's regulations. The students are not required to be present at regular hours but may attend as they please until the course of instruction is completed. After the students have reached a certain degree of proficiency they are allowed to practice on patrons who pay a small fee to the petitioner. Out of these fees a commission is paid to each student in the form of cash or as a credit against equipment which the student may purchase from the petitioner. The petitioner has obtained the services of a part-time bookkeeper who is obliged only to maintain various records but is not required to keep regular hours of employment. The petitioner challenges the respondents' determination that E. M. Robinson, the students and the bookkeeper, are employees within the meaning of the act.

The question on this appeal, however, is not whether Robinson, the students and the bookkeeper are employees within the meaning of the act, but rather whether an action or proceeding for judicial review of a determination of the respondent board may be had prior to the payment of the contributions which the board claims to be due, the petitioner admitting in its petition that it has never paid any contributions under

the act. Such judicial review in advance of payment is expressly prohibited by section 45.11(d) of the Unemployment Insurance Act, which provides in part as follows: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding, in any court against this State or against any officer thereof to prevent or enjoin under this act the collection of any contributions sought to be collected."

Since the matter is before us on the petition and the commission's general demurrer, the record in this case presents the single issue of the availability of the remedy of mandamus. Other questions of law or fact, and particularly the liability of petitioner for the contributions, are beyond the scope of this proceeding.

We may at the outset dispose of the suggestion by petitioner that this proceeding is not one to "prevent or enjoin" the collection of a contribution because the only relief prayed for is the vacation of the findings of the existence of the employer-employee relationship made by the commission. It is obvious that a judgment directing the commission to vacate its findings would in effect amount to a declaration by the court that the relationship did not exist; the commission after such a judgment could not "properly undertake to enforce a tax against plaintiff corporation as an employer in defiance of an adjudication that the latter [asserted employer] did not maintain that relationship with the other parties." (*Louis Eckert B. Co.* v. *Unemployment R. Com.*, 47 Cal.App. 2d 844, 846 [119 P.2d 227].) The Eckert case held that because of the statute above quoted an action for declaratory relief cannot be maintained to determine the existence of the employer-employee relationship prior to the payment of the tax. Since the net result of the relief prayed for herein would be to restrain the collection of the tax allegedly due, the action must be treated as one having that purpose. (See *Helms Bakeries* v. *State Bd. of Equalization,* 53 Cal.App.2d 417, 422 [128 P.2d 167].)

It follows, therefore, that this proceeding in mandamus is prohibited by the statute, and, unless the statute is void, the writ must be denied. In this connection, it is appropriate to pass upon a minor contention of respondent. It is argued that the statute is not the only bar to this action, for it is merely declaratory of section 15 of article XIII of the Constitution. That section provides: "No injunction or writ

of mandate or other legal or equitable process shall ever issue in any suit, action or proceeding in any court against this State, or any officer thereof, to prevent or enjoin the collection of any tax levied under the provisions of this article." It would seem, however, that contributions under the Unemployment Insurance Act, while in the nature of taxes, are not taxes levied under the provisions of article XIII. They are not specifically mentioned therein, and they do not appear to be included within the general provisions of article XIII relating to taxes for revenue. On the contrary, the act specifically provides (§ 19) that contributions shall be held in a specific fund, separate and apart from all public moneys or funds of the state, and shall be administered exclusively for the purposes of the act. The contributions therefore constitute special taxes for a special purpose distinct from the general revenues of the state. For this, as well as other reasons, we see no basis upon which the constitutional provision can apply to this case.

It will also assist in clarifying the issue before us to notice briefly at this time the contention that petitioner is entitled to mandamus solely on the ground that his remedy at law is allegedly inadequate. The cases cited for this proposition (see, e.g., *Bodinson Mfg. Co.* v. *California E. Com.,* 17 Cal.2d 321 [109 P.2d 935]; *Lockhart* v. *Wolden,* 17 Cal.2d 628 [111 P.2d 319]; *Dufton* v. *Daniels,* 190 Cal. 577 [213 P. 949]) are merely declaratory of the general rule set forth in section 1086 of the Code of Civil Procedure and are clearly applicable to the normal situation where no specific statute bars the remedy of mandamus. We may concede, therefore, that were it not for section 45.11(d) of the Unemployment Insurance Act, mandamus might lie in the instant case, and that is the extent of the holding of the cases cited and of numerous others which might be cited.

This principle, however, has no application to the instant case, in which the remedy of mandamus has been expressly prohibited, and the remedy of suit to recover taxes paid has expressly been made the exclusive means of obtaining a judicial review of the legality of the assessment. No decision has been called to our attention where it has been held that mandamus may be issued despite an express statutory prohibition merely because the court may deem the normal remedy less satisfactory than mandamus. Such a holding would, as stated above, be equivalent to declaring the statute

unconstitutional; therefore, the ultimate inquiry in this case is whether the Legislature may constitutionally limit the use of mandamus as it has done in section 45.11(d) of the Unemployment Insurance Act. Unlike Revised Statutes, section 3224 (53 Stats. 446, 26 U.S.C.A., § 3653) (restricting the use of injunctions to prevent the collection of federal taxes), section 45.11(d) of the Unemployment Insurance Act is not merely declaratory of the traditional equity practice under which an injunction might be granted in various exceptional circumstances. As this court has just said in *Eisley* v. *Mohan, ante*, p. 637 [192 P.2d 5], in discussing Constitution article XIII, section 15, ''The provision of the California Constitution is much more than a mere declaration of the rules generally applicable in proceedings for injunction, mandamus, or other legal or equitable relief.'' The same is true of section 45.11(d) of the Unemployment Insurance Act which almost duplicates the language of article XIII, section 15. It follows that cases such as *Miller* v. *Standard Nut Margarine Co.*, 284 U.S. 498 [52 S.Ct. 260, 76 L.Ed. 422], which discuss the various instances under which an injunction may be available according to the common-law rules of equity or under statutes restating them are not relevant here. Even under the federal statute, however, the financial hardship caused by remitting the taxpayer to his remedy by a suit to recover excess payments is not an exceptional circumstance warranting the issuance of an injunction (*Kaus* v. *Huston*, 120 F.2d 183), and financial distress is the principal ground of relief urged here.

Implicit in the contention that the statute is unconstitutional is the assumption that the petitioner has some constitutional right which can be protected only by mandamus. The petitioner relies strongly on *Laisne* v. *State Board of Optometry*, 19 Cal.2d 831 [123 P.2d 457]. That case held that under the due process clauses of the federal and California Constitutions, and under the doctrine of separation of powers in our Constitution, the petitioner was entitled to a type of review of administrative activity which, under our practice, mandate alone could provide. But in the present case it is clear that depriving the petitioner of the remedy of mandate would not deprive him of due process of law, and no other constitutional right under which he might claim this particular form of relief has been suggested. The due process clause does not guarantee the right to judicial

review of tax liability before payment. The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned. (*Cary* v. *Curtis*, 3 How. (U.S.) 23 [11 L.Ed. 576]; *Steinhagen Rice Milling Co.* v. *Scofield* (C.C.A. 5th), 87 F.2d 804; Note 77 A.L.R. 629; see Plumb, *Tax Refunds Suits* v. *Collectors of Internal Revenue*, 60 Harv.L.Rev. 685.) This is also the law in this state: "The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every tax-payer is entitled to the delays of litigation is unreason. If the laws here in question involved any wrong or unnecessary harshness, it was for Congress, or the people who make Congresses, to see that the evil was corrected. The remedy does not lie with the judicial branch of the government." (Shenk, J., in *People* v. *Skinner*, 18 Cal. 2d 349, 355 [115 P.2d 488, 149 A.L.R. 299], quoting approvingly from *Springer* v. *United States*, 102 U.S. 586 [26 L.Ed. 253].)

It is accordingly clear that unconstitutionality of the statute cannot be predicated on the violation of any fundamental right protected by either the state or federal Constitution, and we now proceed to consider the only other ground of attack on the statute, namely, that it purports to interfere with the jurisdiction of the courts of the state as outlined in the Constitution. The Constitution gives the superior courts power to issue mandate and other extraordinary legal remedies (art. VI, § 5), and it is argued that these remedies are always available in any case in which the court may deem them appropriate and that the Legislature has no power to define, curtail or enlarge the circumstances under which they may be issued.

The fallacy in this argument lies in the failure to distinguish between jurisdiction to grant the remedy and the right which is to be vindicated. Except as the Constitution otherwise provides, the Legislature has complete power to determine the rights of individuals. (See *Delaney* v. *Lowery*, 25 Cal.2d 561, 568 [154 P.2d 674].) It may create new rights or provide that rights which have previously existed shall no longer arise, and it has full power to regulate and circumscribe the methods and means of enjoying those rights, so long as there is no interference with constitutional guaranties. To reach the conclusion that the statute is invalid we would

have to disapprove the course of decision for more than a century or hold that the power given to the courts to issue writs of mandate (Const., art. VI, §§ 4, 4b and 5) confers on the parties constitutional rights unrecognized elsewhere in the Constitution. The mere statement in the Constitution that a court has the power to grant certain *remedies,* however, does not mean that the *rights* which those remedies were intended to protect have been fixed in the Constitution as of the time of its adoption and are thereafter immune from legislative change or regulation. This reasoning is fortified, and the position of petitioner is seen to be wholly untenable, upon an examination of the authorities bearing on the analogous situations involving the right to civil relief generally, the right of appeal, the right to injunctions and the right to habeas corpus.

The Constitution (art. VI, § 5) grants the superior court jurisdiction "in all civil cases," except insofar as the Legislature or Constitution places jurisdiction in other courts. Notwithstanding this constitutional grant of jurisdiction over the remedies ("in all civil cases"), it has consistently been held, in accordance with the overwhelmingly majority view, that the Legislature has complete power over the rights involved in such actions and may either create or abolish particular causes of action. Thus, in *Langdon* v. *Sayre,* 74 Cal. App.2d 41 [168 P.2d 57], it was held that Civil Code, section 43.5, abolishing the cause of action for breach of promise to marry, was constitutional. And in *Hanfgarn* v. *Mark,* 274 N.Y. 22 [8 N.E.2d 47], the court upheld the constitutionality of a statute abolishing the cause of action for breach of promise, observing that a contrary decision "if carried to its logical conclusion, would result in a stagnation of law and be directly in conflict with many decisions of this court." (274 N.Y. at p. 26.) (See also, note, 158 A.L.R. 617; 32 Ill.L.Rev. 738 [on the upholding of a similar statute in Indiana. ". . . to accept the argument advanced by those who seek to invalidate this legislation would result in leaving the only power to alter common law rights in the courts."].)

A similar development has taken place with respect to injunctions. The Constitution (art. VI, § 5) formerly provided that the superior court should have "original jurisdiction in all cases in equity." Nevertheless, it has been consistently held that the Legislature has power to determine what are grounds for equitable relief and when and under what cir-

cumstances injunctions may be granted. A typical example is ·the provision of the Civil Code, restated in the Code of Civil Procedure, forbidding injunctions to restrain public officers, held constitutional in a number of cases. (See *Loftis* v. *Superior Court*, 25 Cal.App.2d 346 [77 P.2d 491].) As was said in *Spreckels* v. *Hawaiian Com. & Sugar Co.*, 117 Cal. 377 [49 P. 353]:

"Statutory changes are almost perpetual. New rights are created under which new equities arise. These make new cases in equity, of which the courts at once take cognizance. The jurisdiction of courts of equity is not thereby enlarged. Neither is it diminished when by statutory changes some rights cease to exist and certain cases which courts of equity once entertained can no longer arise. The grant of power [to the court in equity cases] is not confined to cases in equity which could exist under the law as it stood when the constitution was adopted. It includes all cases in equity at all times. It was not intended as a limitation upon the power to legislate upon the rights of persons." (117 Cal. at p. 381.)

On the other hand, if the right to be vindicated is one granted by the Constitution, an injunction may be granted regardless of the statute if injunction is an appropriate remedy, because the right is one which the Legislature cannot abridge. (See 14 Cal.Jur., p. 202.)

The fallacy of petitioner's position is again exposed when we consider the law governing appeals. The Constitution (art. VI, §§ 4, 4b) provides that the Supreme Court and the District Courts of Appeal "shall have appellate jurisdiction on appeal from the Superior Court. . . ." In interpreting this provision, the courts have held that the Legislature has the power to declare by statute what orders are appealable, and, unless a statute does so declare, the order is not appealable. (*Gale* v. *Tuolumne County Water Co.*, 169 Cal. 46 [145 P. 532]; see *Trede* v. *Superior Court*, 21 Cal.2d 630, 634 [134 P.2d 745]; cf. *Byers* v. *Smith*, 4 Cal.2d 209 [47 P.2d 705] [express constitutional right of appeal in cases involving removal from public office]; *In re Sutter-Butte By-Pass Assessment*, 190 Cal. 532 [213 P. 974] [express constitutional right of appeal in cases involving legality of tax assessments].)

A similar result has been reached under Penal Code section 1506 which gives the state the right of appeal in certain situations where a person is discharged from confinement on habeas corpus and provides that the confinement may continue pend-

ing the appeal. Under the Constitution the superior courts, the District Courts of Appeal and the Supreme Court have the power to issue writs of habeas corpus. Prior to enactment of section 1506 of the Penal Code, if a District Court of Appeal or a superior court discharged a person on habeas corpus, the discharge, no matter how patently erroneous, could not be reviewed by any higher court. In other words, the superior courts and the District Courts of Appeal had the final and conclusive power to discharge a prisoner; or, conversely, a prisoner had the right to obtain a discharge from either of these courts without being subjected to the harassment and further confinement attending upon an appeal. (*Matter of Hughes,* 159 Cal. 360 [113 P. 684]; *Matter of Zany,* 164 Cal. 724 [130 P. 710].) Section 1506, providing for an appeal, was enacted in 1927, and it has been applied in a number of cases decided by this court. (See *In re Alpine,* 203 Cal. 731 [265 P. 941, 58 A.L.R. 1500]; *In re Murdock,* 5 Cal.2d 644 [55 P.2d 843]; *In re Marquez,* 3 Cal.2d 625 [45 P.2d 342].) Its constitutionality has never been questioned even though it clearly changes the effect of a writ of habeas corpus as it was formerly used in this state.

There is no inconsistency between the foregoing authorities and decisions which declare, in substance, that the Legislature cannot alter the jurisdiction over extraordinary writs which is prescribed by the Constitution. The controlling distinction between an unconstitutional enlargement of the jurisdiction of a court and a mere regulation of private rights and remedies, or the substitution of one remedy for another, becomes obvious upon an examination of these decisions. *Mauer* v. *Mitchell,* 53 Cal. 289, is apparently the leading case, and is typical of the group. The petitioner applied for a writ of prohibition to prevent the respondent tax collector (a nonjudicial officer) from selling petitioner's property for nonpayment of delinquent taxes. Petitioner's theory was that section 1102 of the Code of Civil Procedure made prohibition the "counterpart" of mandamus, and that since mandamus could be used to compel action by a nonjudicial officer, prohibition, its counterpart, would similarly lie to restrain action by a nonjudicial officer. The court rejected this interpretation of the code as untenable and also unconstitutional, pointing out that the writ of prohibition mentioned in the Constitution is the writ known to the common law, and that its "office" or function was to restrain subordinate *judicial* tribunals.

Thus, the opinion stands for the incontrovertible propositions that the jurisdiction to issue a writ of prohibition is a particular kind of jurisdiction, the meaning of which was long established at the time the Constitution was adopted; that, in using the term "prohibition" in the Constitution, the framers conferred this particular kind of jurisdiction on certain courts; and that this particular kind of jurisdiction consisted of the power to restrain the acts of a lower *judicial* tribunal.

The matter becomes even clearer when we understand that the petitioner in the Mauer case, in seeking to restrain the acts of a nonjudicial officer, was really asking for another traditionally established and constitutionally defined remedy, namely, an *injunction.* The difficulty is, however, that the Constitution does not give the appellate courts the jurisdiction to issue an injunction, and that to issue an injunction in the guise of some other writ, e. g., supersedeas (see *McCann* v. *Union Bank & Trust Co.,* 4 Cal.2d 24 [47 P.2d 283]) or prohibition (*Mauer* v. *Mitchell,* 53 Cal. 289), would constitute an unconstitutional interference with the jurisdiction granted to the trial courts, as well as an unconstitutional enlargement of the jurisdiction of the appellate courts.

*Mauer* v. *Mitchell,* 53 Cal. 289, was followed and reinforced by *Camron* v. *Kenfield,* 57 Cal. 550, where prohibition was sought to prevent the State Controller, another nonjudicial officer, from drawing warrants in payment of certain claims. Again it was declared that if section 1102 were interpreted to authorize the issuance of a writ of prohibition in such a situation, the statute would be an unconstitutional enlargement of the jurisdiction of the Supreme Court. Later cases, too remote in their facts to justify discussion, repeat the basic proposition that the Legislature cannot enlarge the constitutional jurisdiction of the Supreme Court (see *Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640, 648, 652, 694 [137 P. 1119, Ann. Cas. 1915C 822, 50 L.R.A.N.S. 652], [dealing with writ of certiorari, but finding no unconstitutional enlargement]; *Saxton* v. *Board of Education,* 206 Cal. 758, 768 [276 P. 998], [dealing with writ of mandate, but holding that no such enlargement was attempted]). Finally, in *Standard Oil Co.* v. *State Board of Equal.,* 6 Cal.2d 557, 562 [59 P.2d 119], the principle was again declared in a situation similar to that presented in the Mauer case; a statutory provision for review of the acts of a nonjudicial administrative board by writ of certiorari was held invalid on the ground that the writ lies only to review the

acts of judicial tribunals, and that the statute making it applicable to nonjudicial bodies was an attempt to enlarge the constitutional jurisdiction of the court.

It is therefore clear that in the various pronouncements of our courts condemning attempts by the Legislature to interfere with the constitutional power to issue extraordinary writs, the matter involved was the jurisdiction of the court; and the cases held that such jurisdiction could not be enlarged, and occasionally added by way of dictum that it could not be curtailed (see *Standard Oil Co.* v. *State Board of Equal.*, *supra*, 6 Cal.2d 562). So here, if the Legislature had sought to provide that the writ of mandate might lie to compel a judicial act of a court, such as a particular decision on the merits in a particular litigated action, this would manifestly be an unconstitutional enlargement of the nature, function and scope of mandamus; and if the Legislature repealed section 1102 of the Code of Civil Procedure and the other statutes dealing with mandamus, and substituted a statute providing that no *ministerial action* by officers of any court could be compelled, this legislation would necessarily fall as an unconstitutional curtailment of the constitutional power to issue mandamus to compel performance of ministerial duty. But where the Legislature has not sought either to enlarge or curtail the jurisdiction to issue the writ, nor to change its nature or function, there is nothing unconstitutional in its regulation either of the procedure for invoking the writs or of the substantive rights of parties and the remedies available for their enforcement. The legislative enactment of reasonable procedural conditions precedent to invoking a particular remedy, or the substitution of one remedy (such as an action at law in the superior court) for another (such as a proceeding in mandamus), cannot be considered an interference with the jurisdiction over such remedies vested in courts by the Constitution.

The validity of section of 45.11(d) of the Unemployment Insurance Act is supported not only by these authorities, but also by what has long been accepted as the public policy of the federal, state and local governments. The fear that persistent interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions. (See *People* v. *Skinner, supra,* (18 Cal.2d 349, 355 [115 P.2d 488, 149 A.L.R. 299].) As was said by Mr. Justice Field in *Dows*

v. *City of Chicago*, 11 Wall. (78 U.S.) 108, 110 [20 L.Ed. 65], "Any delay in the proceedings of the officer, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public." This policy is carried out in article XIII, section 15, of our Constitution, applying to nearly all of the important state taxes, and again in section 45.11(d) of the Unemployment Insurance Act, which repeats the constitutional prohibition against mandamus.

This policy, applicable to taxation generally, is even more vital in connection with the administration of the system of unemployment insurance. The Unemployment Insurance Act expressly provides for the creation, from the deposits of individual contributions, of a specific fund which is to be the source of benefits thereafter paid. (See §§ 19, 20, 25.) If proceedings which halt the collection of the tax were allowed to be brought before the payments are made, the power would be placed in the hands of employers to so delay the creation of the fund as to frustrate the purposes of the act. It has been expressly declared by this court that these purposes are of great public importance, and that procedural obstacles which would delay or prevent their fulfillment are to be avoided. (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 298 [109 P.2d 942, 132 A.L.R. 715].)

The petitioner's allegation that payment of the claims asserted against it will render it insolvent is one which could be made against any tax and can have no relevancy in a situation where this court, by express legislative provision, is prohibited from interfering in advance of payment of the tax. The argument that compliance with the statute may cause hardship in some instances is one which can be addressed only to the Legislature. Furthermore, the allegations show that petitioner never paid any of the sums required under the act although it was financially able to do so when the contributions should have been paid. It would be strange indeed if this court were to sanction a practice whereby a taxpayer could regularly refrain from paying taxes, the obligation of which he disputes, and then urge that, by reason of his large delinquency, the ordinary remedies provided for reviewing his liability are inadequate in his particular case.

It should be emphasized, in conclusion, that to accept the position of petitioner would not only result in impeding the collection of these contributions and in jeopardizing the state's

system of social security benefits; it would also have a far-reaching and destructive effect on the administration of justice. It would mean that every right which now, formerly or in the future might be enforceable by mandate or by the extraordinary writs would be a constitutional right beyond the reach of the Legislature and solely in the control of the courts. This prospect is made more alarming by the fact that the scope of the extraordinary writs was not clearly defined at common law. (See Gordon, *Certiorari to An Ecclesiastical Court*, 68 L.Q.Rev. 208, 212; note, 14 U.Chi.L.Rev. 270; Freund, *Administrative Power Over Persons and Property*, p. 261.)

Since it appears that the petitioner has no right under the federal or California Constitutions to obtain judicial review of his tax liability before he had paid the amount allegedly due, the Legislature can constitutionally provide that his only remedy is the suit to recover alleged overpayments, and it can prohibit the use of mandamus in advance of payment.

It follows that the judgment must be, and it is hereby, affirmed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. This is an appeal from a judgment of dismissal after order sustaining a demurrer to the petition without leave to amend; accordingly, upon this appeal all of the well pleaded facts must be accepted as true. It is not disputed that upon the facts pleaded the petitioner at all times concerned was not an employer, was not subject to any contributions under the act, and the assessment sought to be collected by respondent is wholly illegal.

The majority opinion holds that the respondent commission has the absolute right and the power to cause petitioner's assets to be summarily sold at public auction in order to collect from petitioner the illegal exaction, amounting, with claimed penalties, to over $3,000, which the commission arbitrarily undertook to assess against it* as "contributions" assertedly accruing since January 1, 1936, under the California Unemployment Insurance Act (3 Deering's Gen. Laws,

---

*Modern Barber Colleges, Inc., is the *alter ego* of E. M. Robinson; either the corporation or Mr. Robinson may be deemed to constitute the petitioner.

Act 8780d) although, as above indicated, it is admitted that petitioner was not at any time an "employer" subject to the act; it is further held that the courts of this state are without power to stay or in any way interfere with the collection of the illegally assessed "contributions" even though admittedly such collection will force petitioner into "receivership and bankruptcy."

The majority opinion frankly states that "The question on this appeal . . . is not [on the merits] . . ., but rather whether an action or proceeding for judicial review of a determination of the respondent board may be had prior to the payment [which it is admitted that the petitioner cannot in reality make] of the contributions which the board claims to be due [but on the pleadings admits to be illegal] . . . Such judicial review in advance of payment is expressly prohibited by section 45.11(d) of the Unemployment Insurance Act, which provides in part as follows: 'No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding, in any court against this State or against any officer thereof to prevent or enjoin under this act the collection of any contributions sought to be collected.' " The opinion then admits that the relief sought is not barred by constitutional provision (Cal. Const., art XIII, § 15) and goes on to declare "We may concede, therefore, that were it not for section 45.11(d) of the Unemployment Insurance Act, mandamus might lie in the instant case . . ." The opinion then undertakes to sustain the statute by declaring a technical distinction "between jurisdiction to grant the remedy [mandate] and the right which is to be vindicated."

Apparently the thesis of the argument is that while the Legislature concededly cannot deprive the courts of constitutionally vested powers it can deprive persons of the right to invoke those powers. That distinction is too fine for me; of the holding I think the words of Dean Pound (33 American Bar Assoc. Journal (Nov. 1947) No. 11, p. 1094) in his article "Annual Survey of Law: Decisions of Courts Show Some Dangerous Trends," are appropriate. Mr. Pound says: "[P]ublic law is swallowing up private law . . . Also, the reviews of the different subjects seem to reflect a steady growth of extra-legal if not often lawless exercise of official power and rise of official absolutism . . . In connection with the tendency to concede the widest power and freedom from judicial scrutiny to administrative agencies, this suggests a

change in our polity in the direction of centralized absolutism . . . [p. 1097] [T]he complacent acceptance of remaking of the Constitution or abrogation of it through judicial decision . . . is significant. It is in line with a general rejection of law and with a cult of absolute exercise of power throughout the world." Certainly the lawless assessment of contributions against a person not subject to the act, the summary sale of petitioner's assets to collect the illegal exaction, the resultant destruction of petitioner's business, and the avowed impotence of the courts to interfere in the process because the administrative commission is beyond the reach of the equity powers of the courts, all combine to suggest that the "cult of absolute exercise of power" has gained a hold in California.

Petitioner has sought relief from the courts through a petition for writ of mandate, filed in the superior court in September, 1945. The petition alleges that petitioner is a California corporation engaged, with the approval of the State Board of Barber Examiners under the laws of this state, in teaching the barber trade in the city and county of San Francisco; that no capital stock has ever been issued by the corporation and that one E. M. Robinson owns all of its assets and operates the barber college as if no corporation had been formed; that since January 1, 1936 (the date an employer's liability for contributions began to accrue, § 37 of the act), petitioner has at all times employed one or two instructors and during most of the time has "employed" a part-time bookkeeper; that students of the college as part of their training practice barbering on paying patrons and receive a percentage of the fees paid by such patrons; that respondent has found that petitioner is an employer as defined by subdivision (a) of section 9 of the act* and has counted as petitioner's employes the following persons: E. M. Robinson (alleged by petitioner to own all of the assets, and to be in fact the sole operator of the college), the two instructors, the part-time bookkeeper, and the students who as described above received commissions for services performed during the course of instruction; that petitioner contends that none of such persons

---

*It should be noted that, as set forth in subdivision (a) of section 9 of the act, " 'Employer' means: (a) Any employing unit, which . . . has . . . in employment *one or more individuals* . . ., *provided that prior to January 1, 1946*, employer means any employing unit which . . . has or had . . . in employment *four or more* individuals." (Italics added.) Thus, if petitioner had less than four employes for the period of time involved in this controversy, it was not then subject to the act.

except the two instructors were employes and therefore, upon the theory that it was not an employer under the act (since it employed less than four individuals), petitioner neither collected from any of such persons nor paid to respondent any contributions; that respondent is attempting to collect from petitioner over $3,000 alleged to be due as contributions (including interest and penalties) which petitioner assertedly should have paid on behalf of itself and its asserted employes; that petitioner has no funds with which to pay the sum demanded; that a portion of such sum is barred by the statute of limitations (§ 45.5 and former § 45.2 of the act; and see Code Civ. Proc., § 338); that petitioner is informed and believes and upon that ground alleges that unless payment is made (or, impliedly, unless the relief here sought is granted) respondent commission will issue a summary certificate as provided under section 45.9 (see also present § 45.10) of the act and cause petitioner's assets to be sold at public auction thereby forcing petitioner ''into receivership and bankruptcy''; that petitioner has no plain, speedy and adequate remedy in the ordinary course of law to prevent the issuance of the summary certificate; that petitioner ''has requested and petitioned the Respondents and the various departments thereof, including the Appeals Board to withdraw their alleged claim, all of which petitions have been denied and refused, and your petitioner has exhausted all of the administrative and appellant provisions as provided for under the Unemployment Insurance Act and the rules and Regulations of the Respondents.'' Also included in the petition are various allegations concerning the conditions and circumstances of the relationship between petitioner college on the one hand and its students and part-time bookkeeper as well as the individual E. M. Robinson, on the other.

Respondent states that on this appeal ''The sole issue . . . is whether the trial court erred in holding that a petition for writ of mandate would not lie where the petition does not allege the payment of the tax in question in view of the specific provisions of Section 45.10 of the California Unemployment Insurance Act.'' Of course, the demurrer, at this stage of the proceeding, admits all factual allegations of the petition, and inasmuch as respondent does not contend that the facts alleged, when taken to be true, do not establish that for the period here involved petitioner was not an employer under the act, this court's decision must be deemed to be predicated

upon the assumption that petitioner actually owes no portion whatsoever of the sum respondent seeks to collect.

The majority opinion, despite the nature of the issue now before this court and despite the remark in that opinion that the "question of . . . the liability of petitioner for the contributions, . . . [is] beyond the scope of this proceeding," is based in part upon the assertions that "The petitioner's allegation that payment of the claims asserted against it will render it insolvent . . . could be made against any tax . . . The argument that compliance with the statute may cause hardship . . . is one which can be addressed only to the Legislature. Furthermore, the allegations show that petitioner never paid any of the *sums required* under the act although it was financially able to do so when the contributions *should have been paid*. It would be strange . . . if this court were to sanction a practice whereby a taxpayer could regularly refrain from paying taxes, . . . and then urge that, by reason of his large *delinquency*, the ordinary remedies provided for reviewing his liability are inadequate in his particular case." (Italics added.) The quoted assertions are abhorrent to an accurate or fair appraisal of the controversy before this court; they assume, utterly without foundation and contrary to all the admissions and presumptions controlling when ruling upon a demurrer, that petitioner owed and *was required* to pay the sums now claimed by respondent, and that petitioner *actually is delinquent*; they ignore the fact that for the 10-year period involved, petitioner may actually not (and should be presumed not to) have been required to pay any sums whatever under the act and may not at any time, or now, be delinquent in any respect or in any amount; they would, upon legally false premises and illogical deductions, compel a small businessman to endure financial ruin because he has not the cash with which to meet an exaction which is, under the rules of pleading, presumptively unlawful (respondent does not even urge otherwise on this appeal), before he can get before the courts of this state to determine the factual issues, if any there should be.

It seems to me also that if it is the view of this court that upon the pleadings petitioner is liable for and is delinquent in paying the contributions sought by respondent, then it should in reason and fairness to both parties unequivocally so declare at this time, rather than to subject the parties and the courts to the burden of another suit by petitioner

(provided it is able to raise the funds to prosecute it) to recover contributions which on this appeal, under applicable rules of law, respondent concedes it is not entitled to.

As is stated (and expounded with unchallenged documentation) in my concurring opinion in *Eisley* v. *Mohan, ante,* p. 637 [192 P.2d 5], it is my view that it is sounder procedure, and better law, to follow the general rule of the federal, and many other jurisdictions, and to maintain the extraordinary remedies as available when extraordinary circumstances are presented and when another adequate remedy is not provided.

Concerning petitioner's contention that it is entitled to mandamus on the ground that its remedy at law is inadequate, the opinion of the Chief Justice recognizes that the cases of *Bodinson Mfg. Co.* v. *California E. Com.* (1941), 17 Cal. 2d 321 [109 P.2d 935], *Lockhart* v. *Wolden* (1941), 17 Cal.2d 628 [111 P.2d 319], and *Dufton* v. *Daniels* (1923), 190 Cal. 577 [213 P. 949], upon which petitioner relies, are "merely declaratory of the general rule set forth in section 1086 of the Code of Civil Procedure." It seems to me that the statute in question (Unemployment Insurance Act, § 45.11 (d) is also "merely declaratory" of the same general rule as to the situations in which mandamus will lie, and that we are here presented with just such a situation.

As appears from the authorities discussed in my concurring opinion in *Eisley* v. *Mohan, ante,* p. 637 [192 P.2d 5], a similar federal statute (26 U.S.C.A., § 3653(a), formerly R.S. § 3224), is construed by the federal courts, including the United States Supreme Court, as being merely declaratory of the prior rule in equity and does not prohibit a suit in equity to restrain the collection of a tax where the tax is illegally exacted and the taxpayer has no adequate remedy at law.

It is a familiar principle that in adopting legislation the Legislature is presumed to have "had knowledge of existing judicial decisions and enacted statutes in the light of such decisions as have a direct bearing upon them" (23 Cal.Jur. § 159, p. 783), and "It is settled that if a statute of another state or country, which has been construed by the courts of that jurisdiction, is adopted in California, it will be presumed to have been adopted with the construction so given it, unless the language is changed in some way to express a different intent. In construing such a statute, the decisions of the

courts of the state or country from which the statute was derived are entitled to great consideration, and their interpretation of the statute will ordinarily be followed. This rule applies in construing a California statute modeled upon or adopted from a federal act." (23 Cal.Jur. § 172, pp. 794-795; see also 59 C.J. 1065-1069; 50 Am.Jur., pp. 315, 357.)

I would follow the federal construction of the federal statute and hold that the California statute under discussion is merely declaratory of the prior equitable principles historically applied by courts and was not intended to forbid resort to those principles in cases involving exceptional circumstances. Here respondent seeks to exact from petitioner contributions, plus interest and penalties, extending back for a period of approximately 10 years—contributions which respondent took no steps to claim during that period, which, by the manner of its attack on the petition, it now concedes are not legally owing, and which now aggregate such a total that payment will force petitioner into "receivership and bankruptcy," with the inevitable result that it may never be able to secure a refund. To hold that under such circumstances it may not apply to the courts for appropriate relief appears to me to be contrary to natural justice and to the fundamental principles of our system of government and courts. As aptly declared in *Higgins Mfg. Co.* v. *Page* (1927; D.C.), 20 F.2d 948, 949 (where defendant sought to collect a tax even though such tax was judicially determined to be illegal) "where there is no adequate remedy at law, the court should have power to grant relief; otherwise, the citizen will be more at the mercy of the departments of the . . . government than is consistent with life in a free country."

I would reverse the judgment on the further ground that the power to issue writs of mandate is expressly confirmed in the courts of California by the state Constitution (Const., art. VI, §§ 4, 4b, 5) and that the Legislature may not, independently of constitutional provision, forbid the issuance of mandamus in any case in which there is no other adequate remedy. (See *Miller & Lux* v. *Board of Supervisors* (1922), 189 Cal. 254, 260 [208 P. 304].) "In this state . . . the law is now established that *mandamus* is the remedial writ which will be used to correct those acts and decisions of administrative agencies which are in violation of law, where no other adequate remedy is provided. [Citations.] . . . Thus the writ has been

used not only to compel administrative action which was refused in violation of law [Citations], but also to annul or restrain administrative action already taken which is in violation of law. [Citations.]'' (*Bodinson Mfg. Co.* v. *California E. Com.* (1941), *supra,* 17 Cal.2d 321, 329.) This court has declared, in a parallel situation involving its appellate jurisdiction, that '' 'The courts of this state derive their powers and jurisdiction from the constitution of the state. The constitutional jurisdiction can neither be restricted nor enlarged by legislative act. An attempt to take away from the courts judicial power conferred upon them by the constitution is void.' (*Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal. 640, 690 [137 P. 1119, Ann.Cas. 1915C 822, 50 L.R.A.N.S. 652].) . . .

''And if the legislature cannot take away this right by direct enactment neither can it accomplish the same result by any indirect device. While the legislature has, ordinarily, the power to create a new remedy for the enforcement of a right or a defense against a wrong, it cannot, under the guise of creating a new statutory remedy, deprive a litigant of an existing constitutionally guaranteed right to defend, even unto a court of last resort, against the enforcement of an alleged right . . . In other words, the legislature cannot by the creation of a new remedy deprive this court of its constitutional grant of appellate jurisdiction if the right involved in the execution of the remedy is of a character which in its very essence is equitable and was of an equitable nature and character at the time of the adoption of the constitutional provision which gave to this court appellate jurisdiction over the subject matter of the remedy.'' (*In re Sutter-Butte By-Pass Assessment* (1923), 190 Cal. 532, 536-537 [213 P. 974].)

The opinion of the Chief Justice attempts to find support for the statute's purported curtailment of the constitutional powers of the courts in the undisputed proposition that ''Except as the Constitution otherwise provides, the Legislature has complete power to determine the rights of individuals,'' provided the word ''determine'' be understood as being used in the sense of ''defining in advance or prospectively'' and not in the sense of either judicial decision or determination on the one hand, or of arbitrary termination on the other. Constitutionally, the Legislature may not, of course, first specify the rights or obligations, whether personal or property, which shall arise under defined circumstances, and then either

abolish the rights or provide for enforcement of the obligations, without a fair opportunity to the individual citizen to be heard and to protect himself, and, it seems to me, the Legislature should be held to be without power to invest in others—whether individuals or agencies of government—the authority arbitrarily to make and to enforce, regardless of both law and equity, illegal exactions against any individual person. Under the statute the commission is authorized to perform certain ministerial acts; the law itself purports to levy certain contributions upon employers under specified circumstances and authorizes the collection of such contributions; but the majority opinion holds that the commission may levy and unrestrainedly collect exactions not authorized by the act from persons not subject to the act. Such opinion recognizes that the exaction is, or may be, illegal and that the "taxpayer" has a legal right to bring suit to recover it after payment under protest, but holds that the statute is valid in denying to the aggrieved person, whatever the showing, the remedy of mandate or injunction. (Cf., *Seaside etc. Hospital* v. *California Emp. Com.* (1944), 24 Cal.2d 681, 683 [151 P.2d 116].) Such holding, which vests a high degree of absolutism in the powers of the commission, in my view is unsound and undesirable.

In support of my view are the holdings in the situations where it is provided that a particular right or cause of action shall no longer exist, where a limitations statute is shortened, where curative taxation acts are adopted, etc.; in such cases the Legislature must allow reasonable periods for the bringing of action to enforce existing rights, is barred from an arbitrary dissolution of those rights, etc. It seems but trite to point out that the so-called "abolition" of the cause of action for breach of promise, relied upon in the opinion of the Chief Justice, was not an abolition of an existing right but a provision that new rights of the proscribed nature should not arise in the future. As to existing causes of action, the Legislature could only shorten the time for the bringing of action to enforce them, and such shortening still was required to allow reasonable time for the exercise of the prior existing rights. Furthermore, in respect to the attempt of the majority opinion to make so stout a crutch of the asserted distinction "between jurisdiction to grant the remedy and the right which is to be vindicated," it is to be noted that

the statute in question does not on its face purport to lop off or destroy "the right which is to be vindicated" but, rather, appears to be directed squarely at the remedy; i.e., at the equitable powers of the courts. The pertinent language of the statute is: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit . . . in any court against this state or any officer thereof to prevent or enjoin under this act the collection of any contributions . . ." Authority to so limit the constitutional powers of the courts, it has already been shown, is not vested in the Legislature.

In the present case the Legislature certainly, provided other constitutional limitations are observed, had and has the right to define the circumstances under and the extent to which an employer's obligation to contribute under the Unemployment Insurance Act should arise.* That fact cannot, however, obscure the further circumstance that after so defining an employer's rights and obligations the Legislature is without power, in the absence of providing another adequate legal remedy, to forbid his resort to mandamus to secure a judicial determination of whether he falls within those definitions; it is likewise without authority to curtail the constitutional power of the courts to issue mandamus to protect the rights of a person where, as here, it is admitted or shown that he is not an employer, that he is not subject to the act, that the assessment is illegal, that he will be irreparably damaged, and that there is no other adequate remedy available. And in any case the determination of whether any prescribed remedy is or is not adequate is a *judicial* function, not a legislative one. (See *Bodinson Mfg. Co.* v. *California E. Com.* (1941), *supra*, 17 Cal.2d 321, 326; *People* v. *Associated Oil Co.* (1930), 211 Cal. 93, 98 [294 P. 717].) I would not abandon that function or seek escape from the responsibility of exercising it.

The judgment should be reversed.

Carter, J., concurred.

*See *Seaside etc. Hospital* v. *Cal. Emp. Com.* (1944), *supra*, 24 Cal.2d 681, 683, in which it was held that mandamus was a proper remedy "to compel appellant [commission] to rule that it [petitioner hospital] was exempt from the operation of the act . . ."; in the case at bar, it will be remembered, upon the record it is admitted that petitioner is not an "employer" within the act and is not subject to its operation.