In re DAYS CALIFORNIA RIVERSIDE LIMITED PARTNERSHIP; Days California La Palma Limited Partnership; Chesterfield Century City Limited Partnership, Debtor.

FINANCIAL SECURITY ASSURANCE, INC., Appellant,

v.

DAYS CALIFORNIA RIVERSIDE LIMITED PARTNERSHIP; Days California La Palma Limited Partnership; Chesterfield Century City Limited Partnership, Appellees.

No. 92–16536.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1994.

June 14, 1994.

Russell D. Pollock and Rodney C. Gilmore, Greene, Radovsky, Maloney & Share, San Francisco, CA, for appellant.

Maureen McQuaid, Bronson, Bronson & McKinnon, San Francisco, CA, for appellees.

Before: SCHROEDER and NOONAN, Circuit Judges, and JONES *, District Judge.

Opinion by Judge NOONAN; Dissent by Judge SCHROEDER.

NOONAN, Circuit Judge:

This case requires decision of a question hitherto undecided by us: whether in California the revenues of a hotel can, to any degree, remain, after bankruptcy, covered by a security agreement entered into before bankruptcy. We answer affirmatively.

In 1989, Days California Riverside Limited Partnership, Days California La Palma Limited Partnership and Chesterfield Century City Limited Partnership (collectively the Debtors) concluded virtually identical loan agreements with Security Pacific Commercial Mortgage Trust VII, which, in turn, assigned all its rights and interests to Financial Security Assurances, Inc. (FSA), the plaintiff here. The Debtors received $41 million.

---

* Honorable Robert E. Jones, United States District Judge For the District of Oregon, sitting by desig-

They made payments on their obligations until October 1, 1990. On March 1, 1991 they filed petitions in bankruptcy, seeking reorganization under Chapter 11. They continued to operate their hotels. In the fall of 1991 FSA moved in the bankruptcy court for adequate protection or segregation of the receipts of the hotels. The bankruptcy court denied the motion. In February 1992 FSA foreclosed. By this time the Debtors had accumulated approximately $700,000 in post-petition net operating revenues, the amount at stake in this appeal.

On August 18, 1992 the district court affirmed the bankruptcy court's denial of FSA's motion for protection or segregation. FSA appeals.

## ANALYSIS

Congress has carefully regulated the post-petition effect of a security interest. Except as provided in 11 U.S.C. § 552(b), property acquired by the estate or the debtor after filing of a bankruptcy petition "is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). The exception relevant here applies to "proceeds, product, offspring, rents, or profits" from property secured prior to the bankruptcy—an exception that is subject to the court ordering otherwise based on the equities of the case. *Id.* at § 552(b). The question to be decided is whether the revenues of a hotel fit within the interests excepted.

As we have observed, the purpose of § 552 is to permit a debtor "to gather into the estate as much money as possible to satisfy the claims of all creditors"; but § 552(b) "balances the Code's interest in freeing the debtor of prepetition obligations with a secured creditor's rights to maintain a bargained-for interest in certain items of collateral. It provides a *narrow* exception to the general rule of 552(a)." *In re Bering Trader, Inc.,* 944 F.2d 500, 502 (9th Cir.1991) (emphasis in original).

nation.

■ In answering our question, we turn to the law of California. Determining whether federal or state law governs a dispute between a bankruptcy trustee and a mortgagee over the right to the rents collected between the mortgagor's bankruptcy and the foreclosure sale, the Supreme Court unanimously held that state law was determinative. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The court emphasized the desirability of having "the basic federal rule" be "that state law governs." *Id.* at 57, 99 S.Ct. at 919. Although the precise question at issue here is not the same as in *Butner,* we see no federal reason requiring a different result and "no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 55, 99 S.Ct. at 918.

We have followed *Butner* in determining whether a self-storage agreement is to be considered a lease or a license under California law when we have had to classify the receipts from the self-storage agreement under § 552(b); under California law we found the agreement to be a lease and the receipts to be within the exception for rents under § 552(b). *In re Safeguard Self–Storage Trust,* 2 F.3d 967, 970 (9th Cir.1993). Accordingly, our question here becomes: Are hotel receipts to be considered under California law as rent in the context of the determination of a lender's security interest in the hotel?

As established by the security instruments in this case, FSA had a security interest in the revenues from the Debtors' hotels. Under the rubric of "Mortgaged Property," the instruments include "the Land," "the Buildings," and "the Fixtures, Personalty, Leases and Rents." "Rents" are·defined as follows:

All of the rents, revenues, income, proceeds, profits, security and other types of deposits, and other benefits paid or payable and to become due or payable to Borrower by parties to any Leases for using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying any portion or portions of the Mortgaged Property, together with all cash and noncash proceeds of any or all thereof.

In a separate assignment of rents and leases, the Debtors also assigned to FSA all the income generated by the hotels.

The district court reached its results by looking at California Civil Code § 1940(b), which excludes lodgers from the rights afforded tenants, and California Civil Code § 1863 which refers to hotel occupancy charges as "rates" rather than rents. These statutes suggest that hotel receipts should not be classified as rents. But as the district court also observed, California Civil Code § 1861 uses the term "room rent" to describe what is subject to the Innkeeper's lien. Finding no decisive answer in the civil code, the district court turned to common law in California, which treats a hotel guest as "a mere licensee." *See, e.g., Sloan v. Court Hotel,* 72 Cal.App.2d 308, 314, 164 P.2d 516 (1945). On the other hand, nonstatutory references can be found in California cases to hotel receipts as rent. *See, e.g., Collins v. Riley,* 24 Cal.2d 912, 915, 152 P.2d 169 (1944) ("traveling expenses" include "hotel room rent"); *Johnston v. Kitchin,* 203 Cal. 766, 769, 265 P. 941 (1928) ("the rents" are collected from a hotel). The common characteristic of all these California references is that none of them are to hotel receipts in the context of our question. Consequently, none of them directly answers the question.

Understandably, in the face of this range of references, the status of hotel receipts as security has been a matter of dispute in the bankruptcy courts. *Compare In re Ashkenazy Enterprises, Inc.,* 94 B.R. 645 (Bankr. C.D.Cal.1986) *with In re San Francisco Drake Hotel Associates,* 131 B.R. 156 (Bankr. N.D.Cal.1991), *aff'd* 147 B.R. 538 (N.D.Cal. 1992). We find Chief Judge King's opinion in the *Drake Hotel* case persuasive when added to the one California case which has come close to addressing our question.

In *Santacroce Bros. v. Edgewater–Santa Clara, Inc.,* 242 Cal.App.2d 584, 51 Cal.Rptr. 613 (1966), a mortgagee petitioned for a receiver to be appointed to take possession of the rents generated by the mortgaged hotel. The petition was granted. *Id.* at 586, 51 Cal.Rptr. 613. The case, although not con-

trolling because it is the decision of a court other than the California Supreme Court, is helpful in pointing to what California law is on our question. Following that guidance in the absence of dispositive authority, we determine for ourselves that California law includes hotel room charges as rents for security purposes.

To hold otherwise in California would discourage the financing of what is a multibillion dollar industry in the state. The approach advocated by the Debtors runs counter to a major premise of hotel financing. Creditors in hotel financing agreements depend—as FSA manifestly depended—on access to the stream of revenues produced by hotels. The value of the hotel receipts helps to determine the value of the property, and it is these receipts, more than the bricks and mortar of the hotels themselves, that the parties bargain around. To exclude hotel receipts from the scope of "rents" in § 552(b) would thus misapprehend and indeed reject the bargain struck by the parties. California law does not dictate so misguided a result. It would make little sense for California to import into the area of hotel credit and the terms of hotel credit either statutory or common law distinctions developed with very different purposes in mind.

The Debtors correctly observe that bankruptcy changes the calculus that courts apply to debtor-creditor disputes. But the Debtors overstate their case. Classifying postpetition hotel receipts as rents does not repeal § 552(b), but rather fine-tunes the equitable balance inherent in the statute. Section 552(b) clearly covers rents gathered from such commercial buildings as office complexes. As Judge King noted, "There is logical appeal in the suggestion that revenue generated from occupancy of real property, for residential use, is rent." *San Francisco Drake Hotel,* 131 B.R. at 160. In responding to that logical appeal we do not upset underlying principles of bankruptcy law.

Our conclusion is reached as a matter of California law determining what rents mean for security purposes in California. It may be buttressed by, although it is not dependent upon, the distinction made in *In re Bering Trader,* 944 F.2d at 502, between

income that is derivative from the secured property and income that is derived from services. In California, as elsewhere, the room rent is "produced by the property" of the hotel. *See In re T–H New Orleans Ltd. Partnership,* 10 F.3d 1099, 1105 (5th Cir. 1993) (quoting *Pioneer Bank and Trust Co. v. Oechsner,* 468 So.2d 1164, 1168 (La.1985)) (applying Louisiana law).

■ At the same time we do not hold that in California all of a hotel's revenues are rent. The revenues derived from the sale of food and drink and from other services provided by the hotel generate "accounts" that cannot be classified as rent. *See In re Bering Trader,* 944 F.2d at 502; Cal.Comm.Code § 9106. The equitable purposes of bankruptcy and the balancing purpose of § 552 require us to distinguish the two types of revenues. *See* 11 U.S.C. § 552(b) (permitting court to rule "based on the equities of the case"); Clark & Clark, *Post–Petition Hotel Rentals in Peril Under Section 552 of the Bankruptcy Code,* 7 Secured Lending Alert, No. 12, 6–7 (February 1992). Hotel methods of accounting will permit the identification of the revenues generated by the rooms and those generated by services. Determination of the net revenues will require allocation of direct and indirect expenses in proportion to each category of revenue. We conclude that FSA's motion should have been granted to segregate the postpetition room revenues of the Debtors.

## REVERSED and REMANDED.

SCHROEDER, Circuit Judge, dissenting in part:

I respectfully dissent from that part of the majority opinion holding that on remand the Bankruptcy Court must segregate food and beverage receipts from room receipts. The issue was not litigated below and was raised sua sponte by this court for the first time at oral argument of the appeal. This circuit routinely declines to address on appeal issues not presented to the trial court, *e.g., Han v. United States,* 944 F.2d 526, 527 n. 1 (9th Cir.1991); *Mosher v. Kane,* 784 F.2d 1385, 1391 (9th Cir.1986), *overruled on other grounds, In re Washington Public Power,*

823 F.2d 1349 (9th Cir.1987), especially when, as in this case, the issues turn on unresolved factual questions, *Pacific Express, Inc. v. United Airlines, Inc.,* 959 F.2d 814, 819 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992). I believe that we should decline to address the segregation issue.

In the post-argument briefing that we requested, the appellant, FSA, contends that if segregation is ordered, the segregation will not help Days Inn because the food and beverage services at the hotels operated at a loss. Days Inn must agree, because its only responsive argument has been to reiterate its position that all of the proceeds, both room revenues and food and beverage revenues, should be treated as accounts receivable. Days Inn apparently has no incentive whatsoever to advocate segregation because even if the food and beverage revenues were treated as accounts, Days Inn will not benefit unless room revenues are treated as accounts as well.

As a result, we do not have any party with an interest in advocating segregation or with incentive to provide us with the precise accounting practices that should be used in segregating a hotel's different categories of revenue. I therefore do not believe we are in a position to render a holding on the issue; it amounts to no more than an advisory opinion that could create serious problems in future cases in which the propriety and manner of segregation are both hotly contested. *See Holloway v. United States,* 789 F.2d 1372, 1374 (9th Cir.1986) ("this court will not declare rules of law that will have no effect on the case at bar.").

I concur in the remainder of the Opinion.