468 So.2d 1164 (1985)
PIONEER BANK AND TRUST COMPANY
v.
George D. OECHSNER III and Innkeepers Choice of New Orleans, Inc.
No. 84-CC-1882.
Supreme Court of Louisiana.
May 14, 1985.
*1165 Guy J. D'Antonio, New Orleans, for relator.
J. Broocks Greer, III, Stephen W. Laramore, Stephen I. Dwyer, Camp, Carmouche, Barsh, Hunter, Gray & Hoffman, New Orleans, Frank Tranchina, Kenner, for respondent.
MARCUS, Justice.
On May 1, 1980, by act of credit sale, Pioneer Bank and Trust Company (Pioneer) *1166 sold to George D. Oechsner III, certain property located at 2222 Tulane Avenue in the City of New Orleans, together with all buildings, improvements, machinery, equipment, furniture, furnishings and all other property, movable and immovable, located on or "used in connection with the operation of the ... property." The sale was made for $1,600,000 for which purchase price Oechsner furnished a promissory note secured by a conventional mortgage and vendor's lien on the property. On the same date, Oechsner executed a $2,000,000 promissory note secured by a collateral mortgage on the same property. Both the act of sale and collateral mortgage provided that default under the terms and conditions of either, or under a loan agreement executed the same date, would be deemed to be a default under the other(s). Oechsner does business as Superdome Motor Inn.
On October 31, 1983, Pioneer filed suit for executory process to effect the seizure and sale of the property, to enforce the collateral mortgage, on the ground that Oechsner's payments on the note were in arrears. The court ordered the issuance of a writ of seizure and sale. Oechsner filed a petition to arrest the seizure and sale of the property by injunction. By a judgment rendered April 9, 1984, based on a hearing held March 20, the trial judge
ordered, adjudged and decreed that the preliminary injunction issued herein ... be and is hereby made permanent and that the issues raised in defendant's Petition to Arrest Seizure and Sale under executory process be referred to the merits of the case.
No further action by way of an appeal or otherwise was taken from this judgment.
After the hearing on March 20, on that same date, Pioneer filed the instant suit to enforce the collateral mortgage by an ordinary proceeding, seeking a personal judgment against Oechsner for the $1,556,929.80 balance due on the collateral mortgage note with recognition of the mortgage. In connection therewith, Pioneer sought to have the property seized under a writ of sequestration on the ground that it was within Oechsner's power to conceal, part with, or dispose of the property and the revenues from the use of the property, during the pendency of the action.[1] Pioneer also sought the appointment of a keeper of the property pursuant to La.R.S. 9:5136, et seq. Upon Pioneer giving bond in the sum of $100,000, a writ of sequestration was issued and a keeper of the property appointed.[2]
Oechsner thereupon filed an exception of lis pendens and a motion to dissolve the writ of sequestration. He contended that Pioneer's suit for executory process was still pending and furthermore that the writ of sequestration should be dissolved because it had been used to seize his business and Pioneer had "no right to sequester the revenues of the ... property because it [had] no lien or privilege to said revenue." He argued that the collateral mortgage was only on the property and that the writ of sequestration should be dissolved because it was not within his power to conceal or waste the property which was protected by the recorded mortgage.
The trial judge sustained Oechsner's exception of lis pendens and ordered the writ of sequestration dissolved, being of the opinion that Pioneer could not "seek executory process and upon the failure of the executory proceeding thereafter seek the same remedy through a writ of sequestration." Pioneer sought writs from the court of appeal which granted its application and reversed, holding that Pioneer was not barred by lis pendens and could seek sequestration. Oechsner thereupon applied to this court for writs. We granted his *1167 application and reversed.[3] On Pioneer's application, we granted a rehearing.[4] We now hold that the court of appeal did not err in overruling the exception of lis pendens and holding that Pioneer was entitled to sequestration.
La.Code Civ.P. art. 531 provides:
When two or more suits are pending in a Louisiana court or courts on the same cause of action, between the same parties in the same capacities, and having the same object, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925....
No further action by way of an appeal or otherwise was taken from the permanent injunction arresting seizure and sale by executory process. Pioneer, which could have converted its executory proceeding into an ordinary proceeding,[5] instead filed this separate suit to enforce the collateral mortgage by an ordinary proceeding, seeking a personal judgment against Oechsner on the collateral mortgage note with recognition of the mortgage. The permanent injunction against executory process is final and definitive and therefore no longer pending. In any event, Pioneer waived its right to executory process by filing an ordinary proceeding.[6] Hence, Oechsner's exception of lis pendens was correctly overruled.
We now consider whether Pioneer was entitled to a writ of sequestration during the pendency of its suit for a personal judgment against Oechsner on the collateral mortgage note with recognition of the mortgage and, if so, the scope of that sequestration. The grounds for sequestration are set forth in La.Code Civ.P. art. 3571 which provides:
When one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.[7]
The scope of seizure under sequestration is set forth in La.Code Civ.P. arts. 327 and 328. Article 327 provides:
The seizure of property by the sheriff effects the seizure of the fruits and issues which it produces while under seizure. The sheriff shall collect all rents and revenue produced by property under seizure.
Article 328 provides:
The sheriff has the power of administration of all property under seizure, regardless of the type of writ or mandate under authority of which the property was seized.
....
The sheriff may, and if the necessary funds therefor are advanced or satisfactory security is furnished him by any interested person shall, continue the operation of any property under seizure, including a business, farm, or plantation. For such purposes, the sheriff may employ *1168 a manager and such other employees as he may consider necessary.
The decisive question in this controversy is whether or not the revenues which Pioneer has attempted to seize are "rents or revenue produced by [the] property," i.e., "revenues therefrom." Under arts. 3571 and 327, Pioneer is entitled to seize the property and collect "all rents and revenue produced by [the] property," if it can show that it is within Oechsner's power to conceal, dispose of, or waste the property or "revenues therefrom."
The difference between the legal relation of an innkeeper and his guest and that of a landlord and tenant has been clearly defined, the principal distinction being "that the tenant acquires an interest in the real estate and has the exclusive possession of the leased premises, while the lodger acquires no estate and has merely the use without the actual or exclusive possession." Walling v. Peavy-Wilson Lumber Co., Inc., 49 F.Supp. 846 (W.D.La. 1943); Coggins v. Gregorio, 97 F.2d 948 (10th Cir.1938). Therefore, we conclude, the revenues at issue are not "rent ... produced by [the] property."
Nonetheless, we find that they are "revenues therefrom" for two reasons. First, the revenues paid into Superdome Motor Inn by its guests are, like rent, paid for the use of the property. In that sense, they, like rent, are produced by the property. Second, the mortgage expressly covers all property, movable and immovable, "used in connection with the operation of the ... property." This combination of facts, i.e., the nature of the revenues and that the mortgage covers all property used in the operation of the property, leads us to conclude that the revenues at issue are "produced by [the] property."
We now consider whether it is within Oechsner's power to conceal, dispose of, or waste these revenues during the pendency of the action, thereby entitling Pioneer to sequestration. Pioneer need not show that Oechsner would conceal or waste the revenues, only that it is within his power to do so. Because of the very nature of the revenues and the fact that they are on the mortgaged property and kept by Oechsner, it is within Oechsner's power to conceal, dispose of or waste the said revenues.[8] Therefore we hold that, under arts. 3571 and 327, Pioneer may have the mortgaged property seized under a writ of sequestration and collect the revenues produced by the property under seizure.
Having reached this conclusion, we further hold that Pioneer is entitled to the appointment of a keeper. In the act of collateral mortgage, pursuant to La.R.S. 9:5136, et seq., Oechsner appointed Pioneer keeper of the property and authorized Pioneer to name a keeper for the property in the event it was seized by writ of sequestration or through any action for recognition or enforcement of the mortgage.[9] La. R.S. 9:5136 provides that the parties to a mortgage may designate a keeper of the property to be appointed pursuant to La. R.S. 9:5137.[10] La.R.S. 9:5137(A) provides *1169 that if the mortgaged property is seized as an incident to an action for the recognition or enforcement of the mortgage, whether by writ of sequestration or otherwise, the court, upon petition therefore, shall direct the sheriff making the seizure to appoint as keeper of the seized property such person as the parties may have designated.[11]
We find that the parties intended that, in the event of default by Oechsner, Pioneer would serve as, or appoint, a keeper of the mortgaged property to the extent authorized in La.R.S. 9:5136, et seq. We further find that a keeper, as authorized in La.R.S. 9:5136, et seq., functions in lieu of the sheriff who, upon seizure of property, is otherwise entitled under La.Code Civ.P. art. 328 to "continue the operation of any property under seizure, including a business...."
In sum, we conclude that this suit is not barred by lis pendens. Furthermore, Pioneer is entitled to a writ of sequestration to have the property seized and may collect the revenues produced by the property under seizure during the pendency of this action and may appoint a keeper of the property.

DECREE
For the reasons assigned, the rulings of the court of appeal are affirmed. The case is remanded to the district court for further proceedings in accordance with the views expressed herein.
NOTES
[1] According to Pioneer's petition, George D. Oechsner III had transferred the mortgaged property to Innkeepers Choice of New Orleans, Inc., (also made a defendant) but, Oechsner was in possession of the property and kept the income from the property.
[2] Pursuant to La.Code Civ.P. art. 3501, an applicant for a writ of sequestration must "furnish security as required by law for the payment of the damages the defendant may sustain when the writ is obtained wrongfully."
[3] 460 So.2d 1037 (La.1984).
[4] 462 So.2d 647 (La.1985).
[5] La.Code Civ.P. art. 2644 provides in pertinent part:

The plaintiff in an executory proceeding may convert it into an ordinary proceeding by amending his petition so as to pray that the defendant be cited and for judgment against him on the obligation secured by the mortgage or privilege.
[6] Board of Missions of Methodist Episcopal Church South v. C.D. Craighead Co., 130 La. 1076, 58 So. 888 (1912); Meadow Brook National Bank v. Lafayette Royal Apartments, Inc., 187 So.2d 793 (La.App. 3d Cir.), writ denied, 249 La. 720, 190 So.2d 235 (1966).
[7] In his motion to dissolve the writ of sequestration, Oechsner contended that the writ should be dissolved because the collateral mortgage was not in authentic form in that the two witnesses were not present at the time of its execution. As La.Code Civ.P. art. 3571 does not require that a mortgage be in authentic form when an application for a writ of sequestration is based upon a claim of mortgage, we need not decide whether or not the two witnesses were present. Accordingly, we reject Oechsner's motion to dissolve the writ of sequestration on that ground.
[8] See Credit Alliance Corp. v. Rabb, 419 So.2d 123 (La.App. 2d Cir.1982); Montagne v. Tinker, 197 So.2d 154 (La.App. 3d Cir.), writ denied, 250 La. 916, 199 So.2d 921 (1967).
[9] The act of collateral mortgage provides:

Mortgagor and Mortgagee do hereby irrevocably appoint and designate Mortgagee, or any agent or nominee of Mortgagee, as keeper of the mortgaged property, and in addition, hereby further expressly authorizes and permits Mortgagee to name a keeper for the property or any part thereof, in the event the mortgaged property, or any part thereof, is seized or sought to be seized by Mortgagee (or any holder of the mortgage note that the mortgage secures) via executory process, sequestration, writ of fieri facias or any other legal proceedings in the courts of the State of Louisiana or of the United States, or through any action for the recognition or enforcement of this mortgage, but nothing herein shall require a mortgagee to petition for, nor to provoke the appointment of any such keeper. This designation and the permission herein granted are made pursuant to Louisiana Revised Statutes 9:5136 et seq., the provisions of which shall likewise govern the powers, duties and compensation of any such keeper.
[10] La.R.S. 9:5136 provides:

The parties to a mortgage of either immovable property or movable property, or both, may designate a keeper of the property to be appointed pursuant to R.S. 9:5137 by expressly naming or identifying in the mortgage instrument the person who is to serve as keeper or by describing the method by which he is to be selected. The parties may designate the mortgagee or his agent as the keeper or may permit the mortgagee to name the keeper at the time the seizure is effected....
[11] La.R.S. 9:5137(A) provides:

A. If any immovable or any movable property, or both immovable and movable property, affected by a mortgage is seized as an incident to an action for the recognition or the enforcement of the mortgage, whether by executory process, writ of fieri facias, sequestration, or otherwise, the court issuing the order under which the seizure is to be effected shall, if such order is petitioned for by the seizing creditor, direct the sheriff or other officer making the seizure to appoint as keeper of the seized property such person as the parties may have designated as herein provided. The designation of a keeper of the property in accordance with the provisions of R.S. 9:5136 is for the benefit of the seizing creditor, but such designation shall not be deemed to require the seizing creditor to provoke the appointment of any such keeper.