**In re T–H NEW ORLEANS LIMITED PARTNERSHIP.**

**In re T–H NEW ORLEANS LIMITED PARTNERSHIP, Debtor–Appellant**

v.

**FINANCIAL SECURITY ASSURANCE, INC., Creditor–Appellee.**

**Civ. A. Nos. 92–1377 to 92–1379 and 92–1764.**

**Bankruptcy No. 91–10681–K.**

United States District Court, E.D. Louisiana.

Oct. 8, 1992.

Ruling on Motion Nov. 10, 1992.

## MEMORANDUM OPINION AND ORDER

LIVAUDAIS, District Judge.

This Court has jurisdiction over these four appeals from the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(a). The Appellant–Debtor, Tollman–Hundley New Orleans Limited Partnership (T–H NOLP), filed a voluntary Chapter 11 petition in the bankruptcy court on February 25, 1991 and since that date has operated as a debtor-in-possession. The bankruptcy judge ruled on two motions in favor of the Appellees, Financial Security Assurances, Inc. (FSA), which are the basis of these appeals. The appeals have been consolidated because of substantial overlap in their content. Essentially, the appeals are, *inter alia:*

1. In civil actions 92–1377 and 92–1379, T–H NOLP appeals the bankruptcy judge's grant of relief to FSA from the stay issued pursuant to 11 U.S.C. § 362(d)(2) in a Memorandum Opinion and Order of March 19, 1992. T–H NOLP also appeals the March 25, 1992 denial of the motion for reconsideration and for a stay.

2. In civil actions 92–1378, 92–1379 and 92–1764, T–H NOLP appeals the bankruptcy judge's grant of FSA's motion for adequate protection or segregation of hotel receipts and the determination that T–H NOLP hotel receipts were subject to FSA's security interest in a March 23, 1992 Memorandum Opinion, 144 B.R. 327, and May 1, 1992 Order.[1]

## BACKGROUND FACTS

T–H NOLP, the Appellant–Debtor, is a limited Delaware partnership. The property of the Debtor, consisted primarily of a hotel property operated under the "Days Inn" trade name known as the Days Inn–Canal Street located in New Orleans, Louisiana. The Debtor's primary business is its ownership of and investment in the hotel. The debtor does not manage the day to day operations of the hotel; instead, it contracts with the Tollman–Hundley Management Services, Inc., an affiliate of the Debtor, to do so.

The Debtor refinanced its operations on February 1, 1989. A vital part of the bond refinancing required the Debtor to enter into a Loan Agreement for $87 million with the Lender.

To secure its financial obligations to the Lender the Debtor issued a collateral real and collateral chattel mortgage with a collateral assignment of "Leases" and "Rents" (Collateral Mortgage). In addition, on February 15, 1989 there was a General Assignment of Accounts Receivable (General Assignment) and Notice of Assignment regarding the General Assignment. The Debtor's financial obligations to the Lender were further secured by a non-recourse guarantee which limited the Debtor's liability. The security interest apparently included the hotel itself, real, personal and other property, and all other income generated from the hotel.

The Lender in turn entered into an inter-creditor agreement with Financial Security Assurance, Inc. (FSA), a New York Stock insurance company and a major creditor of Debtor's estate, and others assigning to them all of the Lender's interests in mortgage notes, mortgage loans, collateral mortgage note, Collateral Mortgage, pledges and guarantees. FSA was the controlling party in the inter-creditor agreement.

FSA issued a surety bond to the bond purchasers which guaranteed payment of principal and interest.

## RECOMMENDATION

### I. STANDARD OF REVIEW

In this matter this district court must act as an appellate court. Depending on the nature of the bankruptcy judge's holding being reviewed a different standard of review applies. *Matter of HECI Exploration Co., Inc.*, 862 F.2d 513, 518 (5th Cir. 1988).

There are three well settled standards. First, matters within the bankruptcy court's discretion are reviewed under an abuse of discretion standard. Second, findings of fact are reviewed under a clearly erroneous standard. Findings of fact lose the insulation of the clearly erroneous standard when such findings are based upon an improper legal standard, or a proper one improperly applied. *In re Missionary Baptist Foundation*, 818 F.2d 1135, 1142 (5th Cir.1987). Finally, conclusions of law are freely reviewable. *Matter of HECI*, 862 F.2d at 518.

The appeals based on the relief from the stay (i.e., Civil Actions 92–1377 and 92–1379) should be reviewed under a clearly erroneous standard because the decision was based on a finding of fact. On the other hand, the appeals regarding the grant of the motion for adequate protection, or segregation of the hotel receipts, and the ruling that the hotel receipts were subject to FSA's security interest (i.e., Civil Actions 92–1378, 92–1379 and 92–1764) are freely reviewable as conclusions of law.

---

**1.** Another issue on appeal is whether the bankruptcy court correctly denied approval of the debtor's disclosure statement. The court finds no error and also notes that any error would be harmless.

II. Civil actions 92–1377 and 92–1379—Relief from the stay issued pursuant to 11 U.S.C. § 362(d)(2) and Denial of Debtor's Motion for Reconsideration and for a Stay.

A. *Standard of Review*

The bankruptcy judge's decision to grant FSA relief from the stay was based on the facts presented to him, therefore the decision must be reviewed under the clearly erroneous standard. The decision was not clearly erroneous as discussed herein.

B. *The Bankruptcy Court's Decision to Grant Relief from the Stay*

■ In order to grant relief from a stay of an act against property two conditions must be met. First, the Debtor must not have an equity in the property. Second, the property must not be necessary to an effective reorganization. 11 U.S.C. § 362(d)(2)(A) and (B).

1. *Equity*

FSA stipulated that it has no equity in the hotel.

2. *Property Necessary to an Effective Reorganization*

■ An effective reorganization requires relief from the automatic stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations. 2 *Collier on Bankruptcy* § 362.07 (15th ed. 1990). In order to reach its decision the bankruptcy court analyzed the evidence concerning T–H NOLP's reorganization plan, and the plan itself.

■ The bankruptcy court determined that it was not an effective reorganization plan because there was no reasonable prospect for a successful reorganization within a reasonable time before allowing the stay to remain in effect. Memorandum Opinion March 19, 1992. Courts require the Debtor to do more than manifest unsubstantiated hopes for a successful reorganization. *United Savings Association v. Timbers of Inwood Forest Assocs., Inc.,* 484 U.S. 365, 371–374, 108 S.Ct. 626, 630–632, 98 L.Ed.2d 740 (1988) (determining whether underse-cured creditors are entitled to compensation under 11 U.S.C. § 362(d)(1) for the delay caused by the automatic stay in foreclosing on their collateral).

The bankruptcy court's factual finding that there was "no reasonable possibility of a successful reorganization within a reasonable time" is not clearly erroneous. *See* Memorandum Opinion March 19, 1992 at 6–10. The evidence and the proposed plan of reorganization under 11 U.S.C. § 1111(b)(1)(A)(ii) do not indicate any reasonable prospect for a successful reorganization within a reasonable period of time. Further, there was no error in finding that FSA was entitled to a deficiency claim against the Debtor's estate.

Finally, the automatic stay was lifted by the operation of the bankruptcy court's March 19, 1992 Order since FSA waived any right it may have had to insist upon the thirty day hearing requirement of § 362(e). *See In re Small,* 38 B.R. 143 (Bankr.D.Md.1984) (creditor waived thirty-day hearing requirement under 362(e) when it sought in a single motion, not only relief from the automatic stay, but also other relief, including adequate protection).

C. *Other Issues*

Based on its findings in the March 19, 1992 Memorandum Order and Order the bankruptcy judge denied approval of the Debtor's motion for reconsideration and for a stay on March 25, 1992. This decision was proper because it was premised on the factual determinations of the reorganization plan.[2]

III. CIVIL ACTIONS 92–1378, 92–1379 and 92–1764

A. *Summary of Arguments*

Prior to the filing of the bankruptcy petition the Debtor and FSA executed various security instruments. The effect of the filing of the bankruptcy petition on the security instruments is the basis of these appeals.

The bankruptcy court held that the hotel receipts of the Debtor which accrued post-

---

**2.** The bankruptcy judge also denied T–H NOLP's request to file an amended plan of reorganiza-tion and disclosure statement.

petition were "the proceeds, product, off-spring, rents, or profits" of property in which FSA had a pre-petition security interest. Therefore, under 11 U.S.C. 552(b), FSA argued that its security interest extends to the hotel receipts acquired by the estate after the commencement of the case and that was entitled to adequate protection, or segregation of post-petition hotel receipts under 11 U.S.C. § 363.

However, T–H NOLP claims that pursuant to 11 U.S.C. 552(a) the hotel receipts are not subject to the pre-petition security interest because they are not "proceeds, product, offspring, rents, or profits." Rather, the hotel receipts are "accounts receivable" as defined by Louisiana State law. La.R.S. 9:3101. Therefore, the debtor contends that FSA is not entitled to any adequate protection or segregation of post-petition receipts under 11 U.S.C. § 363 because FSA has no recognizable security interest in the hotel receipts.

### B. *Relevant Considerations*

### 1. *Standard of Review*

■ The bankruptcy judge's decision to segregate the hotel receipts is based on an application of law, therefore it is freely reviewable.

### 2. *Terms of the Security Agreement Between FSA and T–H NOLP*

FSA has a security interest in the hotel. Its security interest includes a mortgage over the property, plant fixtures and equipment of the hotel and extends to "any right, title, interest or estate hereafter acquired by [the Debtor] in … Land, Buildings, Leasehold Estate, Fixtures, Personalty, Lease and Rents and all cash and noncash proceeds of any and all thereof." Original Brief of Appellee, CA 92–1378, Appendix A at p. 6. More specifically, the terms of the Collateral Mortgage require the Debtor to:

[T]ransfer, pledge, collaterally assign and deliver unto Mortgagee as security for the payment and performance of the Obligation, and grant a security interest

in, all of the right, title and interest of Mortgagor in and to all of the following:
(a) the leases;
(b) the rents;
(c) the fixtures; and
(d) the personalty.[3]

*Id.* at p. 52. The collateral mortgage defines the "leases" and "rents" very broadly:

*Leases:* Any and all leases, subleases, licenses, concessions or other concessions or other agreements written or verbal, now or hereinafter in effect, including any … license agreements which grant … the right, license or concession to use, all or any portion of the Mortgaged Property, and all other agreements … which in any way relate to the use, occupancy, operation, maintenance, enjoyment or Property … together with all cash or noncash proceeds….

*Rents:* All of the rents, revenues, income, proceeds, profits, security and other types of deposits, and other benefits paid or payable and to become due payable to Mortgagor by parties to any Leases for using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying any portion or portions of the Mortgaged Property, together with all cash and noncash proceeds….

*Id.* at pp. 15, 18. Moreover, the accounts receivable are also subject to a separate General Assignment of accounts receivable. *See id.,* Appendix B.

### 3. *The Law:* 11 U.S.C. § 552

Sections 552(a) and (b) deal with the post-petition effect of security interests and govern the determination of whether these pre-petition security agreements encompass hotel receipts generated by the Debtor after the filing of its petition for relief. Section 552(a) states the general rule:

Except as provided in subsection (b) … property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

---

**3.** The collateral mortgage defines personalty to include accounts receivable.

Section 552(b) creates an exception consisting of three parts:

1. "... [I]f the debtor and a secured party enter into a security agreement before the commencement of the case and if the security agreement extends to property of the debtor acquired before the commencement of the case and

2. "to proceeds, product, offspring, rents, or profits of such property,

3. "then such product, offspring, rents or profits acquired by the estate after commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

### C. Analysis

The real problem in this case is to determine the reach of the comprehensive security agreement.

The crux of T–H NOLP's claim is that the bankruptcy judge's decision places too much emphasis on the security agreement. T–H NOLP argues, in effect, that this emphasis allows the appellees to circumvent the purpose of the law through deft definition drafting in the security agreement.

A. Parts 1 and 2 of the 552(b) Exception

In this case the security agreement clearly defines rents and leases so broadly as to characterize the hotel receipts or revenues as part of the security interest covered by the Collateral Mortgage (with the collateral assignment of hotel receipts) before the petition filing.

B. Part 3 of the 552(b) Exception

■ Under the doctrine of *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (whether a security interest in property extends to rents and profits derived from the property is one resolvable by reference to state law) this court is bound by state law on the issue of whether hotel receipts fall within the classifications of security listed in the security agreements.

■ Louisiana law as articulated in *Pioneer Bank and Trust Co. v. Oechsner*, 468 So.2d 1164 (La.1985) suggests that hotel receipts are revenues. In *Pioneer* the Louisiana Supreme Court determined, for purposes of the Louisiana Code of Civil Procedure article 327 (which allows the sheriff to collect "rents" and "revenues" from seized property), that hotel room receipts are not "rents." Hotel receipts are revenues. *See also In the Matter of Thomas Jefferson Construction, Pelican Homestead and the Savings Association v. Thomas Jefferson Construction Corporation and Progressive Bank and Trust*, Bankruptcy No. 86–03431, Adversary No. 88–0306 (proceeds generated from daily room rentals of a lodging facility constituted "revenues" under security documents).

FSA argues that the assignment of the revenues in the Collateral Mortgage extends to the revenues of any "Leases" of the property. "Leases" are defined in the agreement to include the "use" or "occupancy" of property. The bankruptcy court found that, as revenues from the "leasing" of the mortgaged property, the hotel receipts at issue are "Rents" under the security agreement and therefore subject to FSA's security interest as defined by the agreement.

The security agreement, by virtue of drafting prowess, defines the revenues to be "Rents" thus the section 552(b) exception to these post-petition hotel receipts applies to the "proceeds, product, offspring, rents or profits."

Appellant's raise a strong argument for reversal of the bankruptcy judge's order. The bankruptcy judge did not consider whether or not the hotel receipts could fall within the General Assignment of Accounts Receivable because he found that the hotel receipts fell within the collateral assignment of revenues in the Collateral Mortgage. Memorandum Opinion March 23, 1992, 8 n. 5. The legislature does not define hotel receipts, however, they may be characterized as "accounts receivable". La.R.S. 9:3101. As accounts receivable they do not fall within the statutory exception under 11 U.S.C. § 552(b).

T–H NOLP argues that hotel receipts or revenues are not rents. *Pioneer Bank,*

468 So.2d at 1164. However, revenues fall within the rubric of "accounts receivable". "Accounts receivable" is defined under La. R.S. 9:3101(1) as:

Accounts receivable or account means and includes all or any part of any indebtedness owing to the assignor in connection with all or any part of the assignor's business, profession, occupation or undertaking, including but not limited to the sale of goods or the performance of services....

T–H NOLP acknowledges the paucity of Louisiana case law specifically classifying hotel receipts or revenues as "accounts receivable". However, it argues that under Article 9 of the Uniform Commercial Code, "account" is more narrowly defined than the Louisiana Accounts Receivable Act to include hotel revenues. Louisiana Commercial Laws, La.R.S. 10:9–101 et seq. *See also* Original Brief of Appellant, CA 92–1378, 10–11 n. 2–3.

Cases interpreting the definition of "account" under the UCC have held that hotel room revenues constitute accounts. *See, e.g., U.S. v. PS Hotel Corp.*, 404 F.Supp. 1188, 1192 (E.D.Mo.), *aff'd per curiam*, 527 F.2d 500 (8th Cir.1975); *In re Northview Corp.*, 130 B.R. 543, 546 n. 4 (Bankr.App. 9th Cir.1991) (and cases cited therein). Applying the narrower UCC definition of "account," the court concludes that the broad definition of "accounts receivable" contained in La.R.S. 9:3101 includes T–H NOLP's hotel receipts.

As an account receivable, FSA's security interest is governed entirely by the Louisiana Accounts Receivable Act and therefore the exclusive method by which FSA or its predecessors-in-interest, perfected the security interest was pursuant to this Act. In 1989 the Louisiana Accounts Receivable Act provided that:

A. This part is intended to provide an additional method of assigning accounts receivable, and shall not have the effect of repealing any other provision of law authorizing the assignment of accounts receivable. **It is intended, however, that if the parties file a notice of assignment, then, except as provided in Subsection B, this Part shall provide the exclusive method by which the assignee** **of those accounts receivable may perfect a security interest in those accounts.**

La.R.S. 9:3109(A) (1983) (emphasis added).

FSA has no post-petition security interest in the hotel receipts because they are "accounts receivable" pursuant to state law. The parties executed a General Assignment of those accounts receivable and filed a Notice of Assignment with respect to it. This assignment applied only to the hotel receipts pre-petition. Any hotel receipts generated after the petition filing were new accounts receivable not subject to the General Assignment. Perfection of a security interest through a collateral assignment of hotel receipts in the Collateral Mortgage was pre-empted by the General Assignment under La.R.S. 9:3109(A) when FSA's predecessor-in-interest filed the Notice of Assignment.

Section 552(a) provides that, as a general matter, property acquired by an estate after the commencement of the case is not subject to any lien resulting from any security agreement entered into by a Debtor before the commencement of the case. Therefore, FSA does not meet the criteria for the § 552(b) exception.

FSA has no post-petition security interest in the hotel receipts, thus there can be no perfection for post-petition perfection purposes. Since FSA has no perfected post-petition security interest, the property, as defined in 11 U.S.C. § 363(a), is not "cash collateral". The property is not property "in which the estate and an entity other than the estate have an interest...." 11 U.S.C. § 363(a). FSA is not entitled to any adequate protection or segregation of those hotel revenues under 11 U.S.C. § 363(a).

In a recent Ninth Circuit case, *In re Chesterfield Century City Ltd. Partnership*, Civ. No. 2–92–119 GEB, the court dealt with issues and facts that closely parallel those of the present case. *Chesterfield Century City* is a bankruptcy proceeding involving hotel partnerships which are co-borrowers under a bond financing which forms the basis for the claims of Financial Security Assurance, Inc. (FSA) in both that case and the case at bar. The

bankruptcy court in *Chesterfield Century City* held that FSA's liens on hotel revenues did not continue to encumber such revenues earned after the debtors filed their chapter 11 bankruptcy petitions. On appeal, the district court affirmed the bankruptcy court decision.

The district court found that hotel revenues are "accounts receivable" and not rents. *Chesterfield*, Civ. No. 2–92–119 at pp. 5–7. Furthermore "accounts" cannot be transformed into "rents" solely by definitional fiat in FSA's collateral security documents. *Id.* at pp. 7–8. Therefore, because the exception of § 552(b) does not apply, FSA had no security interest in the debtor's post-petition hotel revenues. *Id.* at p. 7. FSA's policy arguments were rejected as contrary to the express provisions of § 552(b).

The *Chesterfield* court held in pertinent part:

> Obviously, it was in FSA's best interest to draft the agreement in such a manner as to assure it the most protection in the event that debtors defaulted on their loan obligations. Once debtors have declared bankruptcy, however, the meaning of the 552(b) exceptions must be interpreted in accordance with the applicable state law—not the alleged pre-petition intent of the parties. To hold otherwise would be an invitation to creditors to avoid the mandate of section 552(a) by substituting their own definitions of collateral for those provided for by existing law. This would seriously jeopardize the rights of unsecured creditors in situations similar to the case at bar.

*Id.* at 7–8.

We follow the decision of the Ninth Circuit. "As Article III courts, the district courts must always be free to decline to follow BAP decisions and to formulate their own rules within their jurisdiction." *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir.1990).

## CONCLUSION

We affirm the bankruptcy court's decision to grant relief to FSA from the stay issued pursuant to 11 U.S.C. § 362(d)(2) and the denial of the motion for reconsideration and for a stay for the aforementioned reasons.

We reverse the bankruptcy court's decision to segregate the post-petition hotel receipts because the T–H NOLP's hotel receipts were not a perfected post-petition security interest. FSA is ordered to return and pay over to T–H NOLP all payments made by T–H NOLP to FSA in accordance with the bankruptcy court's May 1, 1992 Order.

Judgment shall be entered accordingly.

## RULING ON MOTION

Debtor T–H New Orleans Limited Partnership has filed a motion for rehearing of the appeal, or, alternatively, motion for stay pending the appeal. Creditor Financial Security Assurance Inc. ("FSA") opposes the motion.

Debtor argues that the Court incorrectly applied the clearly erroneous standard of review to the Bankruptcy Court's finding that the Debtor had no reasonable prospect of reorganizing without a reasonable period of time. For the reasons stated by this Court in its opinion and by FSA in its memorandum in opposition to the instant motion, the Court finds that its original holding was correct. Further, the Court detects no error of law in the Bankruptcy Court's finding in this respect, even if the finding were a conclusion of law.

Debtor next seeks a stay of the judgment pending appeal. In order for a stay to be entered, debtor would have to post satisfactory security. FSA argues that the only security which will adequately protect its rights is to allow it to retain the net cash which it has received to date relative to the Cash Collateral order, as well as the cash generated pursuant to that order during the pendency of the appeal. Based upon a review of the record, the Court agrees with FSA's position. Accordingly, the Court will enter a stay upon being furnished with an order, to be confected jointly by counsel for Debtor and for FSA, protecting FSA's rights as outlined herein.

Accordingly, for the above and foregoing reasons,

IT IS ORDERED that the motion of Debtor for rehearing of the appeal be and is hereby DENIED;

IT IS FURTHER ORDERED that the motion of Debtor for a stay be and is hereby GRANTED, PROVIDED that Debtor provide the Court with an order jointly prepared by counsel for Debtor and for FSA providing for security as requested by FSA prior to the expiration of the stay presently in effect.