BOWES, Judge.
Defendants (named below) appeal from an order of the trial court requiring them to turn over rents collected to the appointed keeper of the property. We maintain plaintiffs exception of res judicata, refuse to grant defendant’s application for writs and dismiss the proceedings before us.
PROCEDURAL HISTORY
In July of 1985, plaintiffs Dale F. Frey, Eugene K. Botton, Arthur S. Bahr, Brian T. McAnaney, and F.X. Tansey, not individually, but as Trustees of General Electric Pension Trust (hereinafter “GEPT”) initiated this suit by filing a petition for exec-utory process to effect a seizure of an office building owned by defendants, Elm-wood Development Company, a Louisiana Partnership in Commendam, Bernhard S. Weinberger, Armand LeGardeur and Robert H. Grehan (hereinafter “Elmwood”). On July 24, 1986 the trial court signed an order directing the sheriff of the Parish of Jefferson to seize the property. The property was seized on or before December 19, 1986.
On January 21, 1987, Elmwood filed a petition for injunction, seeking to enjoin the sheriffs sale of the property on the grounds that the foreclosure petition contained defects sufficient as to bar GEPT from utilizing executory process. The trial court on March 2, 1987, rendered judgment for GEPT and against Elmwood, holding that no basis existed to enjoin the exec-utory process. Elmwood filed a motion for appeal and also an application for a writ of review with this Court. We denied Elm-wood’s application and refused to issue the writ on the ground that the denial of a preliminary injunction is an appealable judgment. Elmwood’s application for review of our action to the Louisiana Supreme Court was also denied. Subsequently, Elmwood’s appeal in this Court was dismissed on October 19, 1987 pursuant to a joint motion by both parties. Accordingly, the trial court’s judgment, which found no basis to grant an injunction, is now final.
Earlier, on April 1,1987, Elmwood filed a petition for bankruptcy in Federal Court and obtained an automatic stay of the state court proceedings.
The parties entered into a settlement agreement, subject to the approval of the Bankruptcy Court, on July 10, 1987. The Settlement Agreement contained the following provisions:
2. The Settlement resolves all pending litigation between GEPT and the Debtor, including: (i) the Stay Relief Motion filed against the Debtor by GEPT; (ii) the Cash Collateral Motion filed against the Debtor by GEPT; (iii) the Section 543(d) Motion to excuse turnover of property by a custodian filed against the Debtor by GEPT; (iv) the Turnover Motion (and requests for sanctions and damages therein) filed against GEPT and Property One, Inc. by the Debtor; and (v) litigation prosecuted against GEPT by the Debtor in Louisiana state court (at both the trial court level and on appeal), wherein the Debtor has attempted to enjoin GEPT from foreclosing by executory process against the property which is the subject of this Settlement, and has alleged various damage claims against GEPT.
3. Pursuant to the foregoing paragraph 2: (i) all of the bankruptcy litigation identified in subdivisions (i) through (iv), inclusive, of paragraph 2 will be deemed adjudicated by this Settlement and the Bankruptcy Court’s Order which approves and incorporates this Settlement; and (ii) the state court litigation identified in subdivision (v) of paragraph 2 will be finally adjudicated by Order(s) of the appropriate state court(s) consistent with this Settlement. Such state court Order(s):
(a) will confirm and adjudicate that the property which is the subject of this Settlement is subject to GEPT foreclosure by executory process when *495 and if the Debtor fails to comply with this Settlement, that until the Debt- or’s full performance of this Settlement (including full payment of the allowed secured claim of GEPT as provided in this Settlement), the property will remain subject to the pending executory process foreclosure commenced by GEPT on or about July 23, 1985, that the Order authorizing such executory process is fully supported by all necessary authentic evidence, and that until the Debtor’s full performance of this Settlement (including full payment of the allowed secured claim of GEPT), neither this Settlement nor any performance hereunder by the Debtor will constitute a waiver by GEPT (or a cure by the Debtor) of any default upon which the pending exec-utory process foreclosure is based; provided, however, that unless and until there occurs a monetary default under this Settlement entitling GEPT to pursue hereunder its foreclosure against the property, GEPT will not pursue the pending foreclosure against the property;
* * * * * *
6. The collateral (including all proceeds thereof) securing the allowed GEPT secured claim will be: (i) all of the real property, improvements, and personal property owned by the Debtor which comprise the 10-story office building in Jefferson Parish, Louisiana, that is the subject of the litigation previously described in paragraph 2 (“Building”); and (ii) all rents, issues, profits, revenues, and operating income of every kind now existing and hereafter arising or generated from rental and operation of the Building (“Rents”), with the Building and the Rents, when referenced collectively, being identified as the “GEPT Collateral.” Pursuant to this Settlement and the Bankruptcy Court’s Order approving this Settlement, it will be adjudicated that GEPT has a valid and perfected lien, security interest, and assignment encumbering all of the GEPT Collateral (including all of the proceeds thereof).
[Emphasis added].
On August 13,1987, the U.S. Bankruptcy Court rendered judgment, approving the Settlement Agreement, which stated in part:
IT IS HEREBY ORDERED as follows:
1. The Settlement shall be, and hereby is, approved by the Court according to its terms, and incorporated in this Order as the Court’s decree and as though fully set forth herein.
2. Without limiting the foregoing general decree in any way: (i) all matters stipulated in the Settlement shall be, and hereby are, presently and finally adjudicated by the Court in this Order; (ii) GEPT shall be, and hereby is, granted stay relief as provided in the Settlement, so that GEPT will be entitled to enforce its rights under the Settlement without requiring any further Order of the Court permitting GEPT to do so; and (iii) the parties to the Settlement shall be, and hereby are, declared to be finally and irrevocably entitled to all benefits of the Settlement (including, but not limited to, the ‘bankruptcy proof’ remedies provided to GEPT in paragraph 16 of the Settlement), so that the parties’ enjoyment of their respective benefits under the Settlement shall not be modified in any way by any further Order of the Court.
3. The Debtor shall be, and hereby is, expressly authorized; and the Debtor and GEPT shall be, and hereby are, mutually directed, to perform the Settlement according to its terms.
Elmwood failed to comply with the settlement agreement by its failure to pay the full amount of GEPT’s allowed secured claim by December 31, 1990. Immediately thereafter GEPT delivered written notice of default to Elmwood on January 1, 1991.[1]
On April 26, 1991, GEPT “reactivated” the foreclosure proceedings by the filing of *496 motion to appoint a keeper of the property. The trial court ordered that Property One, Inc. be appointed keeper of the property and further that:
... the Defendant, Elmwood Development Company, and its current property manager, John Kushner & Associates, Inc., are ordered to immediately turn over to Property One, Inc., as keeper, all books, records, bank accounts and all other necessary journals, reports and documents or files relating to the operation of the mortgaged property known as ‘Elmwood Tower,’ and all rents, issues, profits, revenues and operating income of every kind now existing or hereafter arising or generated from the rental and operation of the Elmwood Tower.
Elmwood filed a motion to strike, asking that the court delete the words “now existing or” from the April 26th order. Elm-wood also filed an exception, alleging that GEPT had no cause of action against Elm-wood for the rents of the seized property. GEPT then filed a motion to compel the turnover of the rents and for contempt.
After a hearing on all these issues, the trial court rendered judgment overruling Elmwood’s exception of no cause of action and denying both Elmwood’s motion to strike and GEPT’s motion for contempt. The trial court granted GEPT's motion to compel the turnover of accrued rents. Elmwood filed both an application for supervisory writs and an appeal, which raise identical issues, from the denial of its motion to strike. This Court ordered that the writ application be consolidated with this pending appeal.
While this appeal was pending GEPT filed an exception of res judicata in this Court.
GEPT’S EXCEPTION OF RES ADJUDICATA
GEPT contends that the issue presented by Elmwood on appeal, namely the validity of the Turnover Order, was previously adjudicated by the U.S. Bankruptcy Court.
LSA-R.S. 13:4231 provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
We initially note that it is not the Settlement Agreement itself, but rather the judgment of the Federal Bankruptcy Court incorporating that agreement, which forms the basis of the exception of res judicata.
The Settlement Agreement clearly provides that the collateral securing GEPT’s claim consists of the building and all rents. The settlement also clearly allows GEPT to seize all collateral, i.e., the building and rents, via the previously filed petition for executory process and the seizure effected thereunder in the event of a default by Elmwood. The Settlement therefore entitles GEPT to the rents accumulated prior to the appointment of Property One, Inc. and the Turnover Order. Accordingly, the judgment of the U.S. Bankruptcy judge, which incorporates the Settlement in the body thereof is conclusive of the issues presented to this Court by this appeal.
Although the application of the doctrine of res judicata certainly appears to be applicable and is warranted in this case, Elm-wood raises several contentions in both its writ application and this appeal which, out of an abundance of caution, and to insure *497 that appellant has its “day in court,” will be addressed briefly as follows.
Elmwood contends that the trial court’s turnover order requires them to turn over “pre-seizure” rents, and that this is contrary to Louisiana law. Defendant also alleges that the Settlement Agreement is, in effect, an assignment of rents which is not in proper form, i.e., no authentic act and not recorded. We find both of these allegations unfounded and without merit for the following reasons:
The record reflects that, pursuant to GEPT’s petition for executory process, the building was seized by the sheriff and the executory process was stayed, first by the trial court pending defendant’s petition for injunction, and secondly by the bankruptcy proceedings, and finally, by the settlement agreement. The Settlement Agreement then provided that, in the event of default, GEPT could continue with the pending ex-ecutory process proceeding.
Accordingly, the building remained under seizure. Thus, the rents are not “pre-sei-zure” rents as characterized by defendant.
C.C.P. art. 327 provides:
The seizure of property by the sheriff effects the seizure of the fruits and issues which it produces while under seizure. The sheriff shall collect all rents and revenue produced by property under seizure.
C.C.P. art. 328 provides in part:
The sheriff has the power of administration of all property under seizure, regardless of the type of writ or mandate under authority of which the property was seized.
* * * * * *
The sheriff may, and if the necessary funds therefor are advanced or satisfactory security is furnished him by any interested person, shall, continue the operation of any property under seizure, including a business, farm, or plantation. For the such purposes, the sheriff may employ a manager and such other employees as he may consider necessary.
Pursuant to these provisions GEPT could certainly cause to have seized the property and the rents produced by the property after the seizure of the building in December, 1986. See Pioneer Bank and Trust Co. v. Oechsner, 468 So.2d 1164 (La.1985).
The Settlement Agreement entered into by Elmwood and GEPT set forth the manner in which the rents were to be dispersed prior to the payment of Elmwood’s debt. It is not an assignment of rents pursuant to LSA-R.S. 9:4401 as argued by Elmwood. Therefore, Elmwood’s argument that executory process cannot be utilized to seize a purported “assignment of rents” because of failure of form and rec-ordation is not applicable to this proceeding.
For the above discussed reasons, plaintiff’s exception of res judicata is granted and maintained and this case is dismissed. Furthermore, we find the ruling of the trial court to be correct, and therefore we deny defendant’s application for writs which was consolidated with this case for review. All costs are assessed against defendants.
EXCEPTION OF RES JUDICATA MAINTAINED; WRITS REFUSED.

. In December, 1990, Elmwood filed a second bankruptcy proceeding which was dismissed on March 26, 1991. Elmwood’s appeal of the dismissal was rejected by the U.S. District Court and is currently pending in the U.S. Fifth Circuit Court of Appeal.