United States Court of Appeals
Fifth Circuit

**F I L E D**

July 12, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30928


RICHARD N. LEWIS, ETC., ET AL.,

Plaintiffs,

versus

CAROLINE LEWIS HUNT, ET AL.,

Defendants,

ELLEN HUNT FLOWERS, MARY HUNT HUDDLESTON, HOUSTON

BUNKER HUNT, ELIZABETH HUNT CURNES,

Defendants-Appellees,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant.

_____

Appeal from the United States District Court for
the Western District of Louisiana
3:03-CV-2118

_____


Before KING, STEWART, and DENNIS, Circuit Judges.


1

DENNIS, Circuit Judge:

Richard N. Lewis and William J. Lewis, as trustees of the Turner Hunt Lewis Trust, and as co-administrators of the Succession of Turner Hunt Lewis, brought this suit in a Louisiana state court seeking instructions as to the validity under Louisiana law of a certain provision of the trust instrument, or, alternatively, for a concursus proceeding. They named the United States as a party, asserting that its sovereign immunity had been waived by 28 U.S.C. § 2410 for this suit which involves civil actions to quiet title to, or interpleader with respect to, property of the trust on which the government may have or claim a tax lien. The government removed the case to federal district court, and that court rendered summary judgment on the merits declaring that the trust provision was valid under Louisiana law and that the Government had no right or claim to any trust assets. See In re Turner Hunt Lewis Trust, 388 F. Supp. 2d 747 (W.D. La. 2005). The government appealed.

After hearing oral arguments, we requested additional

briefs from the parties on questions pertaining to sovereign immunity and subject matter jurisdiction. Having considered the arguments of the parties and the record in this case, we conclude that, because the allegations of the complaint do not establish that the government had or claimed a lien or a mortgage on the property of the trust when the suit was filed, the complainants may not hale the United States into court under 28 U.S.C. § 2410. Accordingly, we must dismiss this appeal and remand the case to the district court with instructions to dismiss the suit against the United States and to remand the case to the state court for further proceedings consistent with this opinion. Although the parties and the district court did not raise these jurisdictional issues, "federal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary." Torres v. Southern Peru Copper Corp., 113 F.3d 540, 542 (5th Cir. 1997); Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 333 n.8 (5th Cir. 2002)

3

(holding that sovereign immunity issues may be raised <u>sua sponte</u> as they bear on subject matter jurisdiction).

## I. <u>Background</u>

Turner Hunt Lewis, a resident of Lincoln Parish, Louisiana, died October 13, 2002 without issue and without ever having been married. He left no will and, under the Louisiana laws of intestate succession, his only heirs were his nieces and nephews. One of his nieces, Caroline Lewis Hunt, would have inherited one-third of his estate as an intestate heir. Prior to his death, however, Mr. Lewis was interdicted,[1] and his estate, which exceeded $16.5 million, was placed in the Turner Hunt Lewis Trust. The trust instrument provided that, upon his death without a valid will, each of his heirs under state law, except for Caroline Lewis Hunt, would be his successor principal beneficiaries; and that

---

[1] Under Louisiana law, full interdiction is the complete removal of a person's legal right to care for himself and his affairs or property because of mental incapacity. <u>See</u> La. Civ. Code Ann. art. 389 (2001)("A court may order the full interdiction of a natural person of the age of majority, or an emancipated minor, who due to an infirmity, is unable consistently to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, and whose interests cannot be protected by less restrictive means.").

4

any property that would have devolved to his niece and intestate heir, Caroline Lewis Hunt, would vest in her descendants as if she had predeceased Turner Hunt Lewis.

As the trustees' undisputed pleadings establish, many years before Mr. Lewis's interdiction, Caroline Lewis Hunt and her husband entered a Collateral Agreement with the Internal Revenue Service to turn over any inheritances that they received in order to discharge their federal income tax liability. It is also conceded that the only reason that Mr. Lewis was interdicted and his property placed in trust was to prevent a one-third share of Mr. Lewis's assets from going to Caroline through intestate succession, and subsequently to the federal government to pay off the back taxes owed by Caroline and her husband.

The underlying issue, which is res nova under Louisiana law, may be restated more fully as follows: whether the curator of a fully interdicted person without a will can, with court approval, supersede the law of intestate succession by acting for the interdict to

5

create a trust, place the interdict's property in the trust, and name persons as successor beneficiaries different from those who otherwise would have been entitled to succeed as intestate heirs. The Louisiana statutes do not provide a clear and unambiguous answer to this question.[2]

---

[2] Louisiana Code of Civil Procedure 4566(D) provides: "A curator may place the property of the interdict in trust in accordance with the provisions of Article 4269.1. The trust shall be subject to termination at the option of the interdict upon termination of the interdiction, or if the interdict dies during the interdiction, at the option of his heirs or legatees."

Louisiana Code of Civil Procedure Article 4269.1, in pertinent part, provides: "At any time during his administration a tutor may apply to the court for authorization to place some or all of the minor's property in trust for administration, management and investment in accordance with the Louisiana Trust Code. The trust instrument shall name the minor as sole beneficiary of the trust, shall name a trustee, shall impose maximum spendthrift restraints, and shall be subject to termination at the option of the beneficiary upon attaining the age of majority or, should he fail to attain majority, at the option of his heirs or legatees."

The Louisiana Trust Code, Louisiana Revised Statutes § 9:1973(B), provides: "Except as to the legitime in trust, the trust instrument may provide that the interest of either an original or a substitute principal beneficiary who dies without descendants during the term of the trust or at its termination vests in some other person or persons, each of whom shall be a substitute beneficiary."

The government contends that these provisions require that an interdict's trust must designate him as the sole beneficiary and that his property placed in trust must be distributed to the interdict's heirs or legatees upon his death. The plaintiff-trustees argue that when the interdict has no direct descendants, all of the pertinent statutes read together allow the trust to continue beyond his death and allow the trustees to engage in estate planning by naming other persons as beneficiaries with court approval according to the best evidence of what the

On October 16, 2003, the plaintiffs, the trustees-administrators, filed this suit in state court pursuant to Louisiana Revised Statutes § 9:2233 and 28 U.S.C. § 2410 for trustees' instructions or, alternatively, for concursus proceedings, to address the question of whether the trust instrument's successor beneficiary provisions were valid under Louisiana law. The trustee's complaint also named the United States as a party to this suit, claiming the authority to hale it into the state court under 28 U.S.C. § 2410 on the grounds that the United States may have or claim a lien against the trust property through Caroline Hunt.

Specifically, in respect to waiver of sovereign immunity , the allegations of the complaint, in pertinent part, state:

4.

---

interdict would have wanted done with his property. This is a question of state statutory interpretation that we conclude we lack jurisdiction to decide in the present case. Accordingly, the issues here must be deferred for decision by the Louisiana courts or legislature within the context of that state's public policy and traditions.

Jurisdiction over the United States of America with respect to the Trust is conferred on this Court by 28 U.S.C. § 2410, in that, <u>as shown below</u>, the United States of America <u>may have a lien interest</u> in certain of the Trust assets, and 28 U.S.C. § 2410 provides that the United States of America may be named a party in any civil action in any state court having jurisdiction of the subject matter to quiet title to real or personal property on which the United States of America <u>may have a [sic] claim a lien</u>.

....

15.

On September 23, 1988, the New Orleans District of the Internal Revenue Service filed in the records of Lincoln Parish, Louisiana, in Mortgage Book 334 at Page 145 a Notice of Federal Tax Lien Under Internal Revenue Laws (hereinafter the Notice) regarding Caroline L. Hunt, residing at 4508 Lakeside Drive, Dallas, Texas 75205. Pursuant to its terms, the Notice operates as a certificate of release of the federal tax lien as of October 22, 1994. Subsequent to the filing of the Notice but before October 22, 1994, Caroline Lewis Hunt entered into that certain Collateral Agreement between herself, her spouse, and the Internal Revenue Service dated December 15, 1988 (the Collateral Agreement), which obliges her to turn over to the Internal Revenue Service one hundred percent (100%) of the amount of any devise, bequest, or inheritance she receives.

....

17.

<u>In the event the Trust instrument does not comply with Louisiana Code of Civil Procedure Articles 4566(D) and 4269.1</u>, regarding the placing of the property of an interdict into

8

trust, defendant, Caroline Lewis Hunt, as Mr. Lewis' heir, is entitled to an undivided one-third (1/3) interest in the assets standing in the Trust, and, defendant, <u>the United States of America, may, as a result of the Collateral Agreement, have or claim a lien</u> on a portion of the assets standing in the Trust.

(emphasis added).

II. <u>Waiver of Sovereign Immunity Under 28 U.S.C. § 2410</u>

In order to hale the federal government into a court proceeding, a plaintiff must show that there has been a valid waiver of sovereign immunity. "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text... and will not be implied." <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996)(citing <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 33-34 (1992)). The mere agreement in court between parties and their counsel is not sufficient to constitute a waiver of sovereign immunity. <u>Shaw</u>, 309 U.S. at 501 ("No officer by his action can confer jurisdiction."). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms

9

of its scope, in favor of the sovereign." Lane, 518 U.S. at 192. We may not enlarge the waiver beyond the purview of the statutory language. United States v. Williams, 514 U.S. 527, 531 (5th Cir. 1995). Absent a waiver of sovereign immunity, the federal government is immune from suit. Loeffler v. Frank, 486 U.S. 549, 554 (1988). The absence of such a waiver is a jurisdictional defect. Kulawy v. U.S., 917 F.2d 729, 733 (2d Cir. 1990); Bodin v. Vagshenian, 462 F.3d 481, 484 (5th Cir. 2006)(holding that a lack of a waiver of sovereign immunity "deprives federal courts of subject matter jurisdiction").

Under 28 U.S.C. § 2410, Congress has waived the government's sovereign immunity to a limited class of civil actions, solely with respect to property on which the United States has or claims a mortgage or other lien. In pertinent part, Section 2410 provides: "[T]he United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter...to quiet title to...[or] of interpleader or in the nature of

10

interpleader with respect to... property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a).

In addition to requiring that the United States must have or claim a lien or mortgage on the subject property, Section 2410 places other conditions on the government's consent to be sued - notably a requirement that the pleadings be sufficiently specific as to give notice to the Government of the nature of the lien or mortgage. For example, "[t]he complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States..." and, if the case involves a federal tax lien, the complaint "shall include the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice was filed." 28 U.S.C. § 2410(b).

In keeping with the Supreme Court's decisions regarding the construction of statutory waivers, a

noncomplying complaint under 28 U.S.C. § 2410 does not invoke the statutory waiver of sovereign immunity granting consent to suit, and, consequently, cannot state a claim upon which relief could be granted. See Macklin v. United States, 300 F.3d 814, 821 n. 7 (7th Cir. 2002); Dahn v. United States, 127 F.3d 1249, 1251 (10th Cir. 1997); see also Hussain v. Boston Old Colony Ins. Co., 311 F.3d 623, 629 (5th Cir. 2002)(holding that the § 2410 waiver "must be narrowly construed to comport precisely with congressional intent") (citing Estate of Johnson, 836 F.2d 940, 943 (5th Cir. 1988). "Thus, 'no suit may be maintained against the United States unless the suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued.'" Hussein, 311 F.3d at 629 (quoting Koehler v. United States, 153 F.3d 263, 265-66 (5th Cir. 1998)).

Further, in interpreting and applying Section 2410 we must be mindful of its purpose and history as a lien removal statute. Before the enactment of its predecessor, as the Supreme Court observed in U.S. v. Brosnan, 363

U.S. 237, 242-243 (1960):

> [I]t was already then well established that the United States was an indispensable party to any suit affecting property in which it had an interest, and that such a suit was therefore a suit against the United States which could not be maintained without its consent. Furthermore, the laws of many States themselves required all persons claiming an interest in property to be joined as parties to any suit to foreclose a lien or quiet title to the property. Thus there was no way in which a party who held a lien on property senior to that of the United States could get a judicial decree extinguishing the Government's interest.
>
> To remedy this situation, Congress in 1924 passed the predecessor of 26 U.S.C. s 7424, 26 U.S.C.A. s 7424, which gives the holder of a prior-filed lien the right to enforce it by civil action against the United States, subject to the exhaustion of certain administrative remedies. . . .
>
> In 1931, Congress, for similar reasons, passed the predecessor of 28 U.S.C. s 2410, 28 U.S.C.A. s 2410, [which] gives a private lienor the right to name the United States a party in any action or suit to foreclose a mortgage or lien or to quiet title to property on which the United States claims any kind of mortgage or lien, whether or not a tax lien.

(footnotes omitted).

Thus, the statutes' "only apparent purpose is to lift the bar of sovereign immunity which had theretofore been considered to work a particular injustice on private

13

lienors[,]" Brosnan, 363 U.S. at 246, and not to allow any party against whom the government might have any kind of claim to hale the United States into court.

Accordingly, this court and others have consistently held that Section 2410's waiver of sovereign immunity is inapplicable if the government did not have or claim a lien or mortgage on the property that is the subject of the suit at the time the suit was filed. Section 2410 applies "only if at the time [plaintiff] files suit the government had a mortgage or other lien on the property that is the basis of the taxpayer's quiet title action." Koehler v. United States, 153 F.3d 263, 267 (5th Cir. 1998).[3] For example, "[t]here is no waiver (1) when a taxpayer seeks to challenge the validity of any underlying tax assessment [citing Montgomery v. United States, 933 F.2d 348, 349 (5th Cir. 1991)], (2) when the

_____

[3] Koehler cited with approval a number of cases from other circuits with similar holdings. See Hughes v. United States, 953 F.2d 531, 538 (9th Cir. 1992); Dahn v. United States, 127 F.3d 1249, 1251-52 n.1 (10th Cir. 1997); Murray v. United States, 520 F. Supp. 1207, 1210 (D.N.D. 1981), aff'd on other grounds, 686 F.2d 1320 (8th Cir. 1982); MacElvain v. United States, 867 F. Supp. 996, 1002-03 (M.D. Ala. 1994); Brewer v. United States, 764 F. Supp. 309, 314 (S.D.N.Y. 1991); Kulawy v. United States, 917 F.2d 729, 733-34 (2d Cir. 1990).

14

government is claiming a title interest in property rather than a lien interest, [citing Cummings v. United States, 648 F.2d 289, 292 (5th Cir. 1981)] or (3) when the government no longer has a mortgage or a lien upon the property in dispute when the suit was filed. [citing Koehler, 153 F.3d at 266-67]." Hussain, 311 F.3d at 629-630.

Furthermore, if the complaint or pleading does not set forth with particularity the nature of the government's interest showing that it has or claims to have a lien or mortgage against the property that is the subject of the suit, the complaint fails to satisfy the conditions necessary to waive the sovereign immunity of the United States and invoke federal jurisdiction. 28 U.S.C. § 2410(b) ("The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States."); see also Dahn v. United States, 127 F.3d 1249, 1251 (10th Cir. 1997) (holding that a complaint that fails to meet the pleading requirements "does not invoke the statutory waiver of

15

sovereign immunity"); <u>Macklin v. United States</u>, 300 F.3d 814, 821 n.7 (7th Cir. 2002) (noting that consent to suit by the United States is conditioned on proper pleading under section 2410).

### III. Adequacy of the Complaint

Keeping these principles underlying sovereign immunity and Section 2410 in mind, we review the adequacy of the pleadings in the trustee's complaint. The complaint here fails to assert, or to allege facts from which it may be inferred, that the government had or claimed a lien or mortgage on Caroline Lewis Hunt's property when the suit was filed on October 16, 2003.[4] Of those with potential claims to the estate, only Caroline was alleged to have owed any tax deficiency at that time.

---

[4]Also made parties were Caroline Lewis Hunt, the other intestate heirs in their capacity as successor beneficiaries of the trust, and the children of Caroline Lewis Hunt, as her descendants and successor beneficiaries. The government, Caroline, and her children answered, each admitting most of the facts alleged by the trustees in their complaint, and each praying that the court determine and order the appropriate distribution of the trust assets in question. Because of the absence of waiver of sovereign immunity, and the government's consequent immunity from this suit, it is unnecessary and inappropriate for us to reach or discuss the district court's summary judgment decision on the merits.

Therefore, unless the government had or claimed a lien on her property when suit was filed, and a share of the trust assets became hers upon Mr. Lewis' death because the trust provision diverting it to her descendants was invalid, there is no way the government could have had a lien on the trust assets when the suit was filed as required by Koehler. In Section 15 of the complaint, the trustees alleged that the government had a tax lien on Caroline's property that was due to self-release or expire on October 22, 1994, but the complaint failed to allege that the lien did not self-release or expire on that date or that the government re-filed or renewed the tax lien before its expiration.

Section 15 does go on to allege that prior to that date, Caroline entered into the "Collateral Agreement" between herself, her spouse, and the Internal Revenue Service dated December 15, 1988, which obliges her to turn over to the Internal Revenue Service any devise, bequest, or inheritance she receives. However, we have reviewed the Collateral Agreement, which is in the record

17

as an exhibit, and find that it contains nothing which purports to continue, renew or create a tax lien. The Collateral Agreement is simply a contract by which Caroline agreed to turn over future inheritances, and it did not grant the government any lien or security interest in her property.[5] The complaint does not contain any allegation that controverts or obviates the only reasonable and logical inferences that can be drawn from the pleadings, viz., that the government tax lien particularly described in the complaint was the only lien the government ever had against Caroline's property, that pursuant to its terms as described in the complaint it self-released or expired on October 22, 1994, and that the government therefore did not have or claim a lien on Caroline's property when the present suit was filed on October 16, 2003.

Because of the complaint's evident insufficiency, we

---

[5] The Collateral Agreement stipulates that "the federal tax lien" shall attach to all after-acquired property of Caroline Hunt. (emphasis added). However, it does not purport to extend that lien beyond its October 22, 1994 self-release date or to create and impose any additional lien.

asked for and received supplemental briefs from the parties on questions pertaining to sovereign immunity and subject matter jurisdiction.[6] The trust beneficiaries filed a supplemental brief that does not attempt to convince us that the complaint expressly and definitely establishes that the government had or claimed a lien on Caroline's property at the time the suit was filed. Instead, they set forth several imaginative arguments that an additional lien was created other than the federal tax lien which apparently self-released. They argue for the first time in this case that, under one of the Bankruptcy Code's definitions of a lien and also under the laws of Louisiana and Texas, the Collateral Agreement itself granted the United States a lien on any

---

[6] The Government, in supplemental briefing requested by this court, informs us that its investigation reveals that the lien had in fact "self-released" under this provision by the time this suit was filed and that no lien was thus in existence. We decline to consider the results of this investigation, which were not requested by the court and are in any event outside the record and unsupported by any evidence other than the Government's assertions. In re GHR Energy Corp., 791 F.2d 1200, 1201-02 (5th Cir. 1986). This dispute does underscore the defect in the pleadings, however: the pleadings alleged that the lien was scheduled to "self-release" in 1994 without making any allegations as to whether it had, in fact, been released.

inherited property Caroline might receive in order to secure her performance under the Collateral Agreement. The government has not argued, in its letter briefing or at any other time, that the Collateral Agreement could, on its own, constitute a lien.

The beneficiaries' argument is without merit. First, the complaint did not allege with particularity as required by Section 2410(b) that the Collateral Agreement created a lien for the government on Caroline's property in existence at the time of the filing of this suit; the complaint does not quote any specific language or provision of the Collateral Agreement by which the government was granted a lien on Caroline's property. The complaint merely alleges, using contingent language, that if the trust provision in question is invalid the government "may, as a result of the Collateral Agreement, have or claim a lien on a portion of the assets in the Trust." In other words, the complaint says nothing more than that if the government had a lien on Caroline's property when suit was filed it would affect the assets

of the trust, if she owns an interest in them. The beneficiaries' argument, nevertheless, asks us to read into the pleadings an allegation of the existence of an additional lien that was not specifically expressed or referred to in the complaint. But because the complaint did not comply with the strict pleading requirements necessary to establish a waiver of sovereign immunity, the beneficiaries cannot now rely on the vague and indefinite allegations of the complaint as alleging the existence of an additional lien independently created by the Collateral Agreement in order to invoke the waiver of sovereign immunity under Section 2410(a).

Second, even if the beneficiaries could belatedly make the new argument that the Collateral Agreement independently created an additional lien by operation of law on Caroline's property satisfying the Section 2410 requirements for a waiver of sovereign immunity, the legal authorities upon which they rely are inapposite. The beneficiaries argue that because the Collateral Agreement was entered into in settlement of the IRS's

21

claims against Caroline in her bankruptcy proceeding in Bankruptcy Court, and a particular section of the Bankruptcy Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation," 11 U.S.C. § 101(37), the Collateral Agreement necessarily granted the United States a lien against her property to secure its performance. Their argument suffers from both a false premise and a non sequitur. The complaint plainly did not allege with any degree of particularity or definiteness that the Collateral Agreement granted a lien or security interest of any kind to secure Caroline's performance under the agreement. Further, it does not necessarily follow that the Collateral Agreement created or granted the government any kind of a lien defined by the Bankruptcy Code simply because the parties were involved in a bankruptcy case when it was entered into. The beneficiaries have cited no judicial authority for this broad encompassing proposition.

The beneficiaries beg the question again by assuming

22

that a lien existed without providing any factual basis in support therefor while contending that such liens are cognizable and enforceable in Texas, citing Satsky v. U.S., 993 F.Supp. 1027, 1029 (S.D. Tex. 1998) and Louisiana, citing Frey v. Elmwood Development Company, 592 So.2d 493 (La. App. 5th Cir. 1991). The arguments and the cases are inapposite. In Satsky, the court held that a lien filed by a hospital against a patient's cause of action under a Texas statute was unenforceable because the hospital had been paid in full for the services it provided to Satsky, and there was consequently no debt to secure by the existence of the lien. The beneficiaries argue that under Texas law, the Collateral Agreement was an "equitable lien," a concept that has no application here. "It is essential to the existence of an equitable lien arising from express contract that the agreement deal with specific property which must be so described that it can be identified and there must be an intention to create the lien which is clearly apparent from the language of the instrument itself together with the

attendant circumstances." <u>Bradley v. Straus-Frank Co.</u>, 414 S.W.2d 504, 508 (Tex. Civ. App. 1967). The Collateral Agreement did not mention, describe, or identify the Turner Hunt Lewis Trust.

<u>Frey</u> is distinguishable from the present case because the settlement agreement in that case, unlike the one here, expressly provided that the collateral securing the creditor's claim consisted of the building and all rents; that the creditor was entitled to seize all collateral, i.e., the building and rents, via the previously filed petition for executory process and the seizure effected thereunder in the event of a default by the debtor. In both <u>Satsky</u> and <u>Frey</u>, the lien alleged to exist was set forth in clear, explicit language, unlike the Collateral Agreement in the present case in which there is no provision which purports to grant a lien and which the beneficiaries did not allege or expressly argue had been alleged to create a lien until this case reached this court on appeal. Moreover, the United States has never claimed that the Collateral Agreement created or

24

constituted a lien, and did not do so in its briefing to this court.

## IV. Conclusion

For these reasons, we conclude that because the complaint in this case did not allege with particularity facts establishing that when the suit was filed that the government had or claimed a lien or mortgage on property that is the subject of the suit that the waiver of sovereign immunity of the United States under 28 U.S.C. § 2410 is inapplicable to this case. Accordingly, the judgment of the district court is VACATED and the case is REMANDED to it with instructions to dismiss the suit against the United States for lack of a waiver of sovereign immunity and to remand the case to the state court for further proceedings consistent with this opinion.