**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-30964

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

ELLEN HUNT FLOWERS ; ELIZABETH HUNT CURNES ;
HOUSTON BUNKER HUNT ; MARY HUNT HUDDLESTON

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and HIGGINBOTHAM and HAYNES, Circuit
Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The United States appeals the judgment of a federal district court granting summary judgment to the defendants-appellees, relatives of Turner Hunt Lewis, the disposition of whose estate forms the basis of this case. This is the second time these parties have come before us. They are differently arranged than they were the previous time, when another panel of this court dismissed the claim for

lack of subject matter jurisdiction.[1]  We will affirm the district court's rejection of the government's claims.

## I

This court's earlier opinion presented the factual scenario and legal backdrop, but we review the basics.  The story begins in the late 1980s, when Caroline Hunt and her husband Nelson filed for bankruptcy and, in light of their inability to pay sizeable back taxes owed to the I.R.S., reached an agreement providing, in relevant part, that any future monies inherited by Caroline would be turned over in partial payment of her tax debt, up to the total of $90 million, the amount of the I.R.S.'s non-dischargeable bankruptcy claim.[2]

Caroline was a niece of the unmarried, childless, and intestate 84-year-old Turner Hunt Lewis, who upon his death stood to leave a significant sum to his heirs.  Taking her place among Lewis's closest surviving relatives, Caroline would have inherited nearly $5 million, a third of his fortune, upon his death. However, six days before Lewis died on October 13, 2002 of the severe pneumonia from which he had been suffering for months, two of his nephews petitioned for interdiction, and they received an immediate, seven-day temporary order of interdiction on October 7. They were appointed his curators.[3] A hearing that would have considered extending interdiction was scheduled for

---

[1] *Lewis v. Hunt*, 492 F.3d 565 (5th Cir. 2007) (dismissing claims against the United States on jurisdictional grounds).

[2] The Northern District of Texas bankruptcy court approved the arrangement on December 18, 1989.  The I.R.S. had made assessments against the Hunts for eight years of unpaid income taxes as well as other tax-based activity; the total assessment was over $112 million.

[3] Richard N. Lewis was appointed Curator, and William J. Lewis Undercurator.  The two also served as trustees of the Turner Hunt Lewis Trust, which they established as curators.

October 14, but was rendered moot by Lewis's passing the day before. During the term of interdiction, Lewis's curators established a trust in Lewis's name, transferred all of his assets into it, and, in the action here challenged by the I.R.S., provided that upon Lewis's death, "Any property that would have devolved to Caroline Lewis Hunt shall vest in her descendants as if she predeceased Turner Hunt Lewis." The Louisiana court approved this course of action by a judgment of homologation; the I.R.S. was not notified of any of the proceedings.

The effect, and presumably the intent, of this course of action was to pass the estate to family who had no such tax obligation. Its legality is challenged here. The government has filed this federal suit claiming that the curators' course of action was in fact contrary to Louisiana state law and that we should protect its rights by striking down the trust provision in favor of Caroline's descendants and awarding Caroline the money she should have inherited, to be remitted to the I.R.S. according to the 1989 agreement.

We confess the considerable difficulty of understanding the basis under which this claim proceeds. In answering this question, we note what the United States has *not* alleged. The United States has not argued that any party committed tax fraud or violated any other specific internal revenue law with relation to the Turner Hunt Lewis Trust. The United States does not argue that Caroline or Nelson Hunt violated their agreement with the I.R.S. In essence, the government asks that we sit as a general court of review for a seven year old Louisiana district court trust law decision because it has the ultimate effect of redirecting the path of funds to a path beyond the reach of the federal government.

But the government has no claim to money that Caroline Hunt did not inherit, and the state court judgment decided no right of the government.

3

Rather, it decided the authority of Lewis's representatives to dispose of his property.  Had Turner Hunt Lewis omitted Caroline Hunt from his will, the government would have had no recourse.  His representatives did omit her.  If their decision was effective, the matter ends.  And a solemn judgment of a Louisiana state court with jurisdiction over the interdiction approved the omission of Caroline Hunt and is unchallenged.  We see no reasoned basis for our authority to review that judgment and the I.R.S. offers none.

The government's creditor relationship with the interdiction and state court judgment raises questions of standing and failure to state a claim.  These issues are here not easily disentangled.  Congress has given the I.R.S. access to federal courts to collect taxes, and – while this case pushes the outer limits of that license – we will reach the merits and affirm the district court's rejection of the government's claim.  Ultimately, the government is unable to demonstrate any entitlement to the disputed moneys by virtue of its contract with Caroline Hunt.

AFFIRMED.

HAYNES, Circuit Judge, concurring.

I generally concur with the majority's resolution of this case. I write separately because my reasoning differs somewhat from that of the majority.

This case presents the potential for complicit parties to create bad law. Here, while their uncle lay ill in a hospital room, two nephews went to court and, within the space of about a week, obtained orders that not only temporarily preserved Lewis's estate, but also allowed them, essentially, to write a will for a man who arguably had not wanted to do so for himself despite his considerable wealth and advanced age. He died too soon for full proceedings regarding his competency to be conducted. The effect of the Louisiana proceeding was to cut out one niece from what otherwise would have been her inheritance. Of course, in this case, all indications are that the nephews acted with the full blessing of Caroline, the affected niece. But not all cases will involve such harmonious concerted action designed to avoid an unrelated party. One might view this case differently had Caroline been surreptitiously deprived of a $5 million inheritance right against her will by the last-minute machinations of competing heirs.

Either way, however, Louisiana law provides a remedy for the excluded former heir apparent or, arguably, her creditor. Under article 2004 of the Louisiana Code of Civil Procedure, a Louisiana trial court's judgment of homologation is subject to challenge in an action for annulment. LA. CODE CIV. PROC. ART. 2004 (2009). Specifically, Louisiana law allows interested parties, like Caroline or someone standing in her shoes, to seek annulment for up to one year from her discovery that a judgment was secured by ill practices. Under La. Code Civ. Proc. art. 2004, then, this case could have had a solid foundation from which a federal court could have reviewed the judgment of the Louisiana trial court. If it had a factual basis to do so, all the I.R.S. needed to do was bring an action for annulment under the Louisiana statute. That action arguably could

5

have been filed in the federal district court under the broad "tax collection" grant of subject matter jurisdiction provided by 26 U.S.C. § 7402(a). But, as noted by the majority, the I.R.S. did not bring that case.

Instead, the I.R.S. has never raised La. Code Civ. Proc. art. 2004 as the foundation of this suit nor has it asked this court directly to annul the judgment of the Louisiana trial court for "ill practices" or otherwise. Instead, the I.R.S. brought this action for declaratory relief and injunction as a collateral attack on the homologation judgment. Louisiana law expressly prohibits annulment under these circumstances. As discussed in the commentary to La. Code Civ. Proc. art. 2004, the Louisiana legislature has adopted the jurisprudential requirement that actions for annulment based on ill practices may not proceed by way of collateral attack. LA. CODE CIV. PROC. ART. 2004, cmt. (d); *see also Russland Enters., Inc. v. City of Gretna*, 727 So. 2d 1223 (La. Ct. App. 1999) (holding La. Code Civ. Proc. art. 2004 actions must be brought as independent, direct suits). Instead, such an assault on a settled judgment must be brought as a direct action with the express purpose of securing nullification. *Russland*, 727 So. 2d at 1226. As such, while we *could* have had a reasoned basis to review the state court's judgment, we do not have such authority under the demand for declaratory and injunctive relief that the I.R.S. chose to pursue.

Accordingly, while my analysis is somewhat different, I concur in the result, and I join in affirming the judgment of the district court which dismissed this case with prejudice.